800 F.2d 168
 5 Fed.R.Serv.3d 1459
 Samuel W. BROWN, M.D., Plaintiff, Intervening Plaintiff-Appellant,
v.
NATIONAL BOARD OF MEDICAL EXAMINERS, Educational Commission
For Foreign Medical Graduates, Inc., and
Federation of State Medical Boards,
Defendants-Appellees.
 No. 85-2375.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 5, 1986.
Decided Sept. 2, 1986.
 
 David E. Neely, Chicago, Ill., for plaintiff, intervening plaintiff-appellant.
 Bruce H. Weitzman, McDermott Will & Emery, Helen E. Witt, Kirland & Ellis, Chicago, Ill., for defendants-appellees.
 Before BAUER, POSNER, and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Attorney David Neely and the law firm of Mitchell & Black appeal from a district court order imposing sanctions on them under Rule 11 of the Federal Rules of Civil Procedure. The sanctions were based on Neely's Motion to Produce Documents and Place Under Court's Seal and Mitchell & Black's subsequent motion for reconsideration. The district court concluded that both motions were groundless and evidenced a lack of reasonable inquiry into their basis in fact. We find that the district court did not abuse its discretion in imposing the award of attorney's fees on the appellants and thus affirm that decision.
 
 I.
 
 2
 Samuel W. Brown, M.D., who received his medical training in Austria, has unsuccessfully endeavored for a number of years to obtain certification in the United States by attempting to pass various state licensing exams administered under the auspices of the appellees: the Federation of State Medical Boards of the United States ("FLEX"), the Educational Commission for Foreign Medical Graduates ("ECFMG"), and the National Board of Medical Examiners ("NBME"). NBME is a medical testing organization that develops questions and otherwise assists organizations such as FLEX and ECFMG in preparing their respective exams.
 
 
 3
 In the period between 1975 and 1982 Dr. Brown took the ECFMG exam nine times and the FLEX exam four times. In order to pass either test the applicant must achieve a scaled score of at least 75. During this period Dr. Brown's scores were remarkably consistent despite what he asserts was continuous and extensive study and preparation between exam dates. The scaled scores for his nine ECFMG exams all fell in the narrow range between 67 and 69. The FLEX "weighted average" scores were 67, 68, 70, and 70. In the last of his two FLEX exams his scaled scores, as opposed to his "weighted average" scores, were in fact identical when taken to the second decimal place--71.92.
 
 
 4
 This apparent statistical anomaly, along with his failure to improve his scores over time, convinced Dr. Brown that the medical testing organizations were engaged in some form of statistical manipulation. Dr. Brown then commenced, having invoked the assistance of then-Congressman Harold Washington, a letter writing campaign designed to achieve a satisfactory explanation for the test scores. Among the items sought was a personal review of his answer sheet, the answer key, and the test booklet he used during the exam. Dr. Brown alleges that he noted all his answers in his booklet thus allowing him to check for manipulations.
 
 
 5
 On May 12, 1982, the Senior Psychometrician for NBME sent a report to the executive director of FLEX which described how the FLEX exam was scored, the distribution of scores for the years 1980 and 1981, and information about Dr. Brown's performance on the FLEX exam in those particular years. The position taken in the report was that the identical scores were a mere, albeit unusual, coincidence. This report, which purported to address the questions posed by Dr. Brown and his representatives, was sent to the doctor and Congressman Washington. A subsequent letter of May 19 outlined the procedures for reviewing the past exams. These procedures provided that the review be conducted by anyone other than the candidate and that the question booklet would be one of the master copies rather than the individual's actual booklet. Dr. Brown found this situation unsatisfactory and, with the assistance of an attorney other than Neely, filed the present law suit.
 
 
 6
 The original complaint requested relief in the form of a review by Dr. Brown of the 1980 and 1981 FLEX exams including the test booklet, his answers, and the answer key. The original complaint was dismissed for want of prosecution in June 1983 only to be allowed reinstatement one month later. In November 1983, a pretrial conference was held in Judge Grady's chambers. At the conference it was made clear by the attorney representing the testing organizations that the individual candidates' test booklets were destroyed in the normal course of business and that only the master copies remained. The defendants explained that according to their practices anything written in the test booklets was irrelevant to the scoring of the exam; that the booklets were collected to maintain the integrity of future exams; and that storing all individual test booklets under these circumstances would be a substantial waste of space and money. The organizations did at this time offer to settle the case by awarding Dr. Brown the review requested in his complaint using the master copy of the exams the doctor had taken. Dr. Brown, apparently agitated by the destruction of his test booklet, refused the settlement offer.
 
 
 7
 One month later an amended complaint was filed pro se by Dr. Brown that alleged various constitutional deprivations and prayed for millions of dollars in damages. While the defendants made efforts to have the complaint dismissed, Dr. Brown's counsel made a motion to withdraw that was granted. Dr. Brown immediately retained new counsel who successfully withdrew from representation one month later. On March 30, 1984, David Neely appeared for the first time on behalf of Dr. Brown and subsequently filed a new complaint. During the first two months of his representation, Neely sought to correct what he viewed as certain jurisdictional defects in the case and, to this effect, consented to a stay of discovery pending resolution of these issues.
 
 
 8
 During this period Neely commenced settlement negotiations with the defendants. At one of these discussions Neely noted that the report issued May 12, 1982, which purported to explain Dr. Brown's 1980 and 1981 FLEX results, at one point used the name "Samuel N. Brown" rather than Samuel W. Brown. This error led NBME to reevaluate its report and rescore the exam. On May 31, 1984, a letter amending the May 1982 report was prepared. This letter noted that Samuel N. Brown was in fact Samuel W. Brown and that other non-substantative transposition errors had been made. Thus, the letter was meant to serve as an errata to the May 1982 report.
 
 
 9
 To Neely, this letter represented "the straw that broke the camel's back." Convinced that the letter represented a sudden change of position by the defendants and that there was a danger that necessary documentary evidence would be altered or destroyed, he filed an emergency Motion to Produce Documents and Place Under Court's Seal. On June 19, 1984, Judge Grady held a hearing on the motion where he questioned Neely on the basis for his belief that the defendants were going to violate their ethical obligations by altering evidence. Although his responses were cryptic, it appears that Neely believed the May 31, 1984 letter and the destruction of the test booklets created this danger. Neely did not identify what evidence might be destroyed (it appears at one point that he was concerned with the possible destruction of Dr. Brown's non-existent test booklets), and, at oral argument before this court, he admitted that the motion was devoid of documentary support. The district court found this motion to be groundless and thus violative of Rule 11. Neely was given an opportunity to respond within five days and eventually the district court entered an order assessing attorney's fees of $2,538 against Neely.
 
 
 10
 In July 1984, Neely retained the law firm of Mitchell & Black in order to move for reconsideration of the Rule 11 sanctions. A motion for reconsideration was filed accompanied by fifteen exhibits designed to demonstrate that the Neely's motion had merit. These exhibits consisted of correspondence between Dr. Brown and the testing organizations that, according to the motion, demonstrate the shifting stances taken by the defendants. The chief piece of evidence is a letter saying that a representative of Dr. Brown could view "the test booklet" as well as the other information. The motion claims that this establishes that Dr. Brown's booklet was destroyed with knowledge that it was relevant to Dr. Brown's claim and that the organizations had changed their position about allowing access to the actual test booklet because this early letter did not refer to the "master" booklet. Judge Grady found, notwithstanding the additional submissions, that the motion for reconsideration was also groundless and assessed Mitchell & Black $250 in attorney's fees under Rule 11. This appeal ensued.
 
 II.
 
 11
 Rule 11 of the Federal Rules of Civil Procedure provides:
 
 
 12
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 13
 The rule, as now constituted, represents a significant relaxation from its pre-1983 version with regard to the standard for deciding whether sanctions are appropriate. The standard for imposing sanctions under Rule 11 is no longer a determination of subjective bad faith but is now an objective question of "reasonableness under the circumstances." Fed.R.Civ.P. 11 advisory committee note; accord Thornton v. Wahl, 787 F.2d 1151, 1154 (7th Cir.1986); Indianapolis Colts v. Mayor of Baltimore, 775 F.2d 177, 181 (7th Cir.1985); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 205 (7th Cir.1985); In re TCI Limited, 769 F.2d 441, 445-46 (7th Cir.1985). Under Rule 11 an attorney risks sanctions for failing to make a reasonable inquiry into both the factual and legal basis for the claim he asserts. See In re TCI, 769 F.2d at 446; see also FDIC v. Elefant, 790 F.2d 661, 667 (7th Cir.1986).
 
 
 14
 Unlike much of our past precedent, the issue here is completely a question of factual investigation. The district court found that Neely brought a motion that carries the insinuation that the defendants were engaged in improper conduct without a supporting factual basis. After reviewing the record we conclude that this determination was not an abuse of discretion. Hilgeford v. Peoples Bank, 776 F.2d 176, 179 (7th Cir.1985); see also Rodgers, 771 F.2d at 205. But see McCandless v. Great Atlantic and Pacific Tea Co., 697 F.2d 198, 201 (7th Cir.1983).
 
 
 15
 At oral argument Neely conceded that his motion lacked evidentiary support as submitted. Additionally, it lacked any indication of the rationale for the motion or the type of document that he believed needed to be placed under seal. At the emergency hearing Neely was given full opportunity to explain the basis for his motion. His apparent logic was that the destruction of Dr. Brown's test booklet was improper and, when combined with the shift in defendants' position evidenced by the May 31, 1984 letter correcting the May 12, 1982 report, established a reasonable fear that the remaining documents in Dr. Brown's test file would be altered or destroyed.
 
 
 16
 The problem is that the premises do not support the conclusion. A careful review of the May 1984 letter makes it clear that the changes in the earlier report were technical and non-substantive. This letter contains absolutely no basis for the conclusion that the defendant organizations were somehow changing their position, let alone about to alter evidence. The letter may be read as undermining the test evaluation methodology but it is not capable of being construed, as Neely attempted, as impugning the integrity of the defendants.
 
 
 17
 Similarly, the record is replete with references to the destruction of the individual test booklets in the ordinary course of business. Neely's motion reveals that he was aware of this fact. No attempt was made, nor evidently could one be made, to establish that this practice was generally not followed or was improper. The fact that an enterprise did destroy what is its accepted practice to destroy provides no support for the conclusion that the enterprise intends to destroy or alter other critical evidence that is not routinely discarded. The motion for reconsideration filed by Mitchell & Black seems to contend that pre-1983 references to "the test booklet" by the defendants establish that the defendants acknowledged the need for Dr. Brown's test booklet to be reviewed, and then, before it was produced, they destroyed it. Not only is this a tortured reading of the past correspondence, but it is also largely irrelevant to the motion. Even if the destruction of the test booklet was improper it does not support an emergency motion to produce and seal unspecified documents because this would prove merely that the defendants' adherence to their practice of discarding the booklets was, under the circumstances, erroneous; it does not logically lead to the conclusion that wholesale destruction or alteration of other documents was to follow.
 
 
 18
 In filing his motion, Neely failed adequately to assess the nature of the record and how it related to and supported the motion. Notwithstanding his sincere beliefs in the merits of his client's position, Neely had a duty to "ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief." In re TCI, 769 F.2d at 446. In the present case Neely filed a motion accusing the opposition of serious misconduct based on little more than supposition, and sanctions were thus appropriate. It should be noted that the district courts should be sensitive before assessing Rule 11 sanctions against an attorney, such as Neely, who is placed in the precarious role of replacing an earlier retained counsel in the middle of a case. These concerns are alleviated in the present case because the sanctions arose out of a motion brought initially by Neely, because the motion was based on a document, the May 31, 1984 letter, that was received during the time of Neely's representation, and because Neely had sufficient time to review the record up to the time he was retained before he filed the motion.
 
 
 19
 On its face the motion for reconsideration filed by Mitchell & Black is a more troubling basis for sanctions. An attorney generally should be able to petition the district court for reconsideration of the imposition of sanctions without risking additional sanctions, since the fact that the underlying claim was groundless does not necessarily mean that the appropriateness of sanctions under Rule 11 is an equally clear-cut issue. In the present case, however, the motion for reconsideration, although styled as a claim for reconsideration of the sanction was, in effect, another presentation of the motion to produce and seal. Mitchell & Black's approach was not to focus on the nature of Neely's conduct, a tactic that probably would not have warranted action under Rule 11. Rather, they attempted to provide documentary support for the underlying motion. Since these documents, which consisted primarily of correspondence relating to Dr. Brown's unsuccessful attempt to achieve his desired result prior to the institution of the lawsuit, fail to establish a fear of destruction of documents (regardless of what they may or may not illustrate about the defendants), the motion to reconsider was as groundless as Neely's initial motion. Thus, under the circumstances of this case, Rule 11 sanctions were not clearly erroneous.
 
 
 20
 As a final matter Neely questions whether his due process rights were violated by the way sanctions were imposed. In Rodgers we held that the district court need not hold a hearing when the Rule 11 sanctions are based on counsel's incompetence in handling the matter rather than a finding of bad faith. 771 F.2d at 206. The district court after imposing sanctions on Neely allowed him to respond and subsequently entertained a reconsideration motion accompanied by full briefing on both sides. Thus, Neely's attempts to analogize this case to Miranda v. Southern Pacific Transportation Co., 710 F.2d 516 (9th Cir.1983) are misplaced.
 
 III.
 
 21
 Under the post-amendment version of Rule 11, sanctions were intended to become a more integral aspect of the judicial process. Despite the increased license to impose sanctions, judges should always seriously reflect upon the nuances of the particular case, and the implications the case has on the nature of the legal representation, before imposing sanctions. In the present case we cannot conclude that the district court abused its discretion in imposing attorney's fees under Rule 11. Finding that the amount of the fees assessed was reasonable, we accordingly AFFIRM. The costs of this appeal shall be borne by the appellant. No attorney's fees shall be imposed in this appeal.