**UNITED STATES of America, Plaintiff,**

v.

**ALLEN L. WRIGHT DEVELOPMENT CORPORATION, et al., Defendants.**

**No. 85 C 5502.**

United States District Court,
N.D. Illinois, E.D.

Jan. 26, 1987.

William F. Murphy, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Michael G. Erens, Kamensky & Rubinstein, Lincolnwood, Ill., for defendants.

**MEMORANDUM OPINION
AND ORDER**

ASPEN, District Judge:

This is really a rather simple case. The defendant Allen L. Wright Development Corporation ("Wright") had not made any installment payments on a mortgage note insured by the federal government since 1977, and the government foreclosed. Yet, for some reason this action has generated over 400 pages, filling four court files and

---

has taken over a year and a half to resolve and is still not resolved. Currently before this Court is plaintiff United States of America's motion for sanctions. For the reasons noted below, we grant that motion.

### FACTUAL BACKGROUND

The United States filed its complaint on June 11, 1985, to foreclose on the mortgage note of the Allen L. Wright Development Corporation. Wright used the funds from the note to build the Esma A. Wright Convalescent Center ("the Project"). The summons for the complaint was served that same day. Wright did not file its answer until November 22, 1985, apparently because the parties indicated to the Court that they were attempting to work out a settlement.

In its answer, Wright did not deny a single material allegation of the complaint. Instead, it stated that it lacked knowledge or information sufficient to form a belief as to the truth of most of the government's key allegations. The answer also included two affirmative defenses:

*First Affirmative Defense*

[Wright] is fulfilling the purposes of the National Housing Act providing adequate nursing home care in the most economically depressed community in the state and is the largest single employer in the community. The foreclosure of the mortgage would disrupt the operation of the project and would cause displacement of the residents who are on public aid in contravention of the intent and purposes of the governing National Housing Act.

*Second Affirmative Defense*

[Wright] asserts that HUD's and FHA's failure to exercise due care in the examination and inspection of the construction and rehabilitation allowed defects in construction and non-completion of other construction which resulted in [Wright] being unable to open the project for full occupancy resulting in a cash flow insufficient to service the mortgage debt.

Two weeks after it filed its answer, Wright served interrogatories and a request for production of documents upon the United States. The interrogatories started with six pages of instructions to the United States on just how it should construe the interrogatories and four pages of interrogatories. The request for production of documents was labeled, "Defendant's First Request for Production of Documents," and was ten pages long.

About a month after Wright answered, the United States filed a motion for summary judgment which the Wright vigorously, although very slowly, opposed, despite its failure to deny the material allegations of the complaint. The United States filed a motion to stay discovery pending the disposition of its motion for summary judgment, and this Court referred the matter to a magistrate for consideration of the United States' motion to stay. The magistrate set a status hearing on the motion, but even before the magistrate had the parties in for the status conference to resolve the discovery issue, Wright filed a twenty-four page motion to compel discovery with attachments. This, of course, necessitated a response from the United States. When the parties did go before the magistrate, he ruled that the United States need only respond to limited discovery, and that Wright had to respond to the motion for summary judgment.

The next round involved the United States' requests for discovery. In order to respond to Wright's first affirmative defenses, the United States requested discovery that would reveal whether Dr. Wright had any economic self-interest in keeping the Project under his control. Wright refused to respond to the bulk of the United States' discovery requests, and the United States was forced to file a motion to compel discovery. The magistrate ruled on the motion and directed Wright to turn over its corporate records and tax returns but denied without prejudice the request for Dr. Wright's personal tax returns. Ten days later Wright, instead of complying with the magistrate's order, requested a protective order, which the magistrate granted over the United States' objections. This then necessitated the

government filing a motion to vacate the protective order, a twenty-page memorandum of law in support with attachments. This Court granted the United States' motion to vacate the protective order, finding that such an order was "draconian," additionally commenting that "defendant offers no justification for the order, nothing which satisfies Rule 26(c) at least."

In the meantime, Wright's attorneys remained very active. Wright filed a "Motion to Quash" parts of the United States' subpoena duces tecum served upon Dr. Wright that directed Dr. Wright to produce his personal income tax returns. This was immediately denied by the magistrate in a minute order without opinion. Wright promptly filed a motion to reconsider the magistrate's order denying its motion to quash. This then necessitated a seven-page memorandum of law from the United States to which Wright then sought leave to file a reply memorandum. This Court denied defendant Wright's motion to reconsider two days after Wright filed its reply. We did so in a minute order without an opinion.

After Wright finally submitted its response to the United States' motion for summary judgment, this Court granted the United States' motion for summary judgment, finding no merit to Wright's response. Also, the United States demonstrated that throughout the arrearage period Dr. Allen Wright utilized the losses sustained by Wright as a subchapter S corporation to offset his personal income.

## MOTION FOR SANCTIONS

 Rule 11 requires the court to impose sanctions on a party or attorney who signs a pleading or motion which is not well grounded in fact and warranted by existing law or even if well grounded in fact and warranted by existing law is interposed for an improper purpose. This Rule is to be enforced when applicable. *Hammonds v. Board of Election Commissioners for the*

*City of Chicago,* 112 F.R.D. 33, 34 (N.D.Ill. 1986) (J. Aspen). The test under Rule 11 is objective. *See, e.g., Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). A party's after-the-fact justifications for its actions are irrelevant to our inquiry. The standard is "one of reasonableness under the circumstances." *Brown v. National Board of Medical Examiners,* 800 F.2d 168, 171 (7th Cir.1986) (quoting the advisory committee note to Rule 11). Under Rule 11 an attorney risks sanctions for failing to make a reasonable inquiry into both the factual and legal basis for the claim he asserts. *Id.* at 172.

The United States contends that Wright's answer, affirmative defenses and opposition to its motion for summary judgment were not well grounded in fact or warranted by existing law or good faith argument for the extension, modification or reversal of existing law. Further, the United States contends that Wright's answer, affirmative defenses, discovery of Wright and Wright's recalcitrance in making discovery were all interposed for an improper purpose. Specifically, the government alleges that the purpose of Wright's actions was to realize tax shelter benefits for Dr. Wright and to increase attorneys' fees which were being paid out of the subject of the foreclosure.

 We agree with the government that this is an appropriate case in which to assess attorneys' fees and costs pursuant to Rule 11.[1] We find that Wright's answer, affirmative defenses, response to the United States' motion for summary judgment and discovery requests were not well grounded in fact or warranted by existing law or even a good faith argument for the extension, modification or reversal of existing law. F.R.Civ.P. 11. Additionally, we find that Wright's actions and the actions of its attorneys were motivated by an improper purpose, specifically to delay the proceedings as long as possible to garner income tax benefits and to increase the

---

1. To the extent our decision to assess fees and costs stems from defendant's abuse of the discovery process, we alternatively award fees and costs pursuant to F.R.Civ.P. 26(c), 37 and 28 U.S.C. § 1927 as requested, but not addressed by this Court, in plaintiff's January 15, 1986 Response to Defendant's Motion to Compel Discovery and by virtue of this Court's denial of defendant's motion for a protective order.

attorneys' fees payable out of the subject of this foreclosure action.

Litigation in the federal courts is very costly; for example, so far in this mortgage foreclosure action, defendants have paid their attorneys approximately $23,000. It is sometimes necessary in the litigation process for a law firm to paper the court with memoranda, interrogatories, discovery requests, objections to motions to compel, objections to discovery and other miscellaneous legal papers. This work product, of course, is always to the firm's own financial advantage. Fortunately, however, the client who must pay the bill closely monitors all litigation expenses and measures those expenses against the bottom line. The client, before approving the production and filing of such papers, considers how much it has to gain versus how much the attorneys' fees are costing it. This balance usually assures that one side will not shamelessly and fruitlessly run up the meter. Thus, in most instances, charges of harassment, delay and improper purpose must be viewed skeptically and proven clearly. *See generally* Note, *Plausible Pleadings: Developing Standards for Rule 11 Sanctions*, 100 Harv.L.Rev. 630, 642–44 (1987). When, however, this important control is missing, where the client is not responsible for paying the bills and thus has no concern with the ultimate cost of the litigation, then an inference of improper purpose arises when a rather simple case inexplicably becomes complex, convoluted and vigorously resisted at every stage.

This is such a case. Wright and its attorneys admit that through every step of this litigation they thought that someone else's meter was running. Throughout this matter, Dr. Wright authorized all litigation expenses to be paid from the operating expenses of the Project. Dr. Wright, personally, had nothing at risk when he approved each and every motion, paper, etc., filed in this case. There was no reason for him to balance the expense of the attorneys' time with the possible gain to himself, because he was not paying the bill. The Project was paying the bill. And, if the government was eventually successful, it did not matter because there would be no money

out of his pocket, or so he incorrectly thought. *See* Order granting plaintiff's motion to compel defendant Allen L. Wright Development Corporation to restore improperly-diverted funds to the United States.

Wright's response to the United States' allegation of improper purpose was to deny that there is any evidence of such. However, as noted above, we find there is an implication of such an improper purpose, and it is incumbent upon the defendants to justify their actions. They have not done so. Because we find that Wright's actions in this lawsuit and the actions of its attorneys were interposed for the improper purpose of delaying this action to garner income tax advantages and to incur fees to be paid out of the subject matter of this lawsuit, and not out of Wright's pocket, we assess attorneys' fees and costs pursuant to F.R.Civ.P. 11 against defendant Wright and its attorneys.

In conclusion, we find that defendant Dr. Allen Wright as owner of Wright and Wright's attorneys have violated F.R.Civ.P. 11 and are therefore liable to the United States for attorneys' fees and costs incurred in foreclosing and prosecuting this foreclosure. Dr. Wright and the law firm of Kamensky & Rubinstein are therefore jointly and severally liable for such fees. It is so ordered.