**PAINEWEBBER, INCORPORATED, Plaintiff,**

v.

**CAN AM FINANCIAL GROUP, LTD., Timothy McDonald and Mark George, Defendants.**

**No. 87 C 6890.**

United States District Court, N.D. Illinois, E.D.

June 30, 1988.

L. Andrew Brehm, Michael B. Roche, James D. Adducci, Darryl C. Porter, Karen A. Mieszala, Daniel A. Blouin, Schuyler, Roche & Zwirner, Chicago, Ill., for plaintiff.

Jerome Feldman, Feldman & Halprin, Chicago, Ill., for defendants Can Am and Mark George.

Judith A. Halprin, Chicago, Ill., for defendant Timothy McDonald.

## OPINION AND ORDER

MAROVITZ, Senior District Judge.

*PaineWebber's Motion For Sanctions*

Currently pending before this court is the motion by plaintiff PaineWebber, Incorporated (hereinafter "PaineWebber") for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") and 28 U.S.C. § 1927 ("§ 1927"). To better understand the facts making up the backdrop of this motion (hereinafter "Motion For Sanctions"), a chronology of significant and relevant events is in order.

### Background

On August 5, 1987, PaineWebber filed suit in this court, naming as defendants Can Am Financial Group, Ltd. ("Can Am"), Timothy McDonald ("McDonald") and Mark George ("George") (collectively, "Defendants"). The complaint alleged that Defendants opened a securities account at PaineWebber, had PaineWebber purchase for them stock in Canadian Platinum Refineries ("CPR") worth $319,338.65, and tendered to PaineWebber two checks: one for $10,000 (for which there is no dispute) and one for $309,338.65 (which subsequently "bounced"). The complaint stated that after crediting their account for the amount received on the later sale by PaineWebber of the CPR stock, Defendants still owed PaineWebber $245,308.66. *See, PaineWebber, Inc. v. Can Am Financial Group, Ltd.,* 668 F.Supp. 667 (N.D.Ill.1987).

On August 19, 1987, PaineWebber served McDonald personally at the apartment in Chicago that was leased for him by George. The process server also left with McDonald a summons and complaint for George and Can Am. With regard to the service on Can Am, the service on it was technically correct since McDonald was an officer in the corporation. Fed.R.Civ.Proc. 4(d)(3). However, while this service was technically correct, the normal and usual procedure for serving a corporation is to serve its registered agent.

As the Defendants had yet to file an appearance by September 14, 1987, the Clerk of the Court ("Clerk"), acting upon the request of PaineWebber, entered an order of default against the Defendants. On that same day, in accordance with Federal Rule of Civil Procedure 55(b)(1), the Clerk entered a default judgment against the Defendants in the amount of $246,705.61, being the amount of the debt plus interest.

Citations to discover assets were issued by the Clerk on September 24, 1987 for each of the Defendants and for three banks where Defendants maintained accounts. The return date on the citations was October 7, 1987.

On October 7, Attorney Judith A. Halprin ("Halprin") appeared in open court. She identified herself as the attorney for McDonald. She also stated that Attorney Jerome Feldman ("Feldman") could not be present, but that he would be representing Can Am and George. At that time, the court stated that it would grant the Defendants leave to file motions to vacate, if they so desired. The court ordered McDonald to file his Motion To Vacate by October 21, and suggested that any other defendant's motions be filed by that date, also.

On October 13, 1987, Feldman filed with the Clerk his appearance on behalf of Can Am and George. (The Clerk's docket sheet and the court file show that, to date, no appearance form has been filed with regards to Halprin and her representation of McDonald.)

Separate motions to vacate the default judgments were filed by each of the Defendants on October 27, 1987. (This Opinion, however, will concentrate on Can Am's motion, as it is the only one relevant to the pending Motion For Sanctions.) In the "Motion of Can Am Financial Group, Ltd. to Vacate *ex parte* Judgment of September 14, 1987 Pursuant to Rule 60(b) of F.R.C. P." (hereinafter "Can Am's Motion to Vacate"), Can Am admits in Paragraph 4 that it owed PaineWebber the money for the purchase of the stock, but that it did not have the funds available at the time. Motion to Vacate at p. 2; *see also,* "Jerome Feldman's Response to Motion for Sanctions Pursuant to Rule 11 and U.S.C. 28,

§ 1927" (hereinafter "Feldman's Response") at p. 2. Paragraph 5 of Can Am's Motion to Vacate was Can Am's attempt at raising a "meritorious defense" to the complaint. In Paragraph 5, Can Am states that if PaineWebber had "not sold the stock in the manner in which it did, which caused a depression in its value on the Canadian stock exchange, then the defendant, Can Am ... could have raised the necessary funds to satisfy the indebtedness." Motion to Vacate at p. 2. At first glance, Paragraph 5 seems to raise a "prevention" defense. *See, e.g., Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). However, subsequent filings cast this Paragraph as asserting that PaineWebber may have sold the CPR stock in an improper manner, possibly going to PaineWebber's duty to mitigate damages. *See,* Feldman's Sur-reply to Motion for Sanctions ("Feldman Sur-reply") at p. 5.

Also on October 27, 1987, Halprin had filed with the court the "Motion To Vacate Default Judgment Against Timothy McDonald" (hereinafter "McDonald's Motion To Vacate"). The court notes that McDonald's Motion To Vacate was signed by McDonald himself, not by his counsel, Halprin.

PaineWebber filed its response to Can Am's Motion to Vacate on November 11, 1987. Attached to this response, and made part of it by reference, were two signed declarations (made under the penalty of perjury): one by Grant L. Ellington, the manager of PaineWebber's Northbrook, Illinois office ("the Ellington declaration"); and one by Timothy Daly, the Manager of Investigations and Market Surveillance of the Alberta Stock Exchange in Calgery, Alberta, Canada ("the Daly declaration"). The Ellington declaration denied that PaineWebber improperly sold the CPR stock, and detailed how PaineWebber took steps to maximize the price that PaineWebber would receive. Both the Ellington and Daly declarations state that on July 8, 1987 (the day PaineWebber was to begin selling off the CPR stock), at 11:30 A.M. (local time), the Alberta Stock Exchange halted trading in CPR stock at the request of CPR management. Both declarations state that when trading in CPR stock resumed on July 27, 1987, the market price dropped dramatically. The Daly declaration states that when trading was halted on July 8, CPR was selling at $2.10 per share; CPR opened on July 27 at $1.99 per share; and CPR closed on July 27 at $1.00 per share.

On December 11, 1987, Halprin and Feldman filed with this court a document entitled "Joint Defense Submissions In Response to Plaintiff's Objections to Motions to Vacate Default Judgments."

On December 22, 1987, due to the contradictions contained in the various briefs and affidavits submitted to the court, the court ordered PaineWebber employees Grant Ellington and Thomas Rice along with defendants George and McDonald to be in court on January 20, 1988 for the purpose of testifying as to the various motions to vacate and as to their respective affidavits and declarations.

The court held an evidentiary hearing on January 20, 1988 in accordance with the court order of December 22, 1987. At that hearing both Feldman and George admitted that Can Am had no defense to the PaineWebber action, Record of Jan. 20, 1988 Proceedings (hereinafter "Record") at pp. 17, 86, 104; and that the sale of CPR stock by PaineWebber did not cause a drop in the market price of CPR stock, Record at pp. 55–57. Also revealed during the testimony of George on January 20 was that he (George) is a Canadian citizen who currently resides in the Province of Alberta, Record at p. 21; that he had been Chairman of the Board of CPR since early 1987, Record pp. 53, 75; and that at approximately the same time that CPR was preparing to make an announcement regarding setting up an operating facility in California to recover platinum from spent catalyst, George and some others embarked on a program of purchasing a major position in CPR stock, Record at pp. 54, 61–62, 74, 78–80, 82–83.

At the conclusion of the January 20, 1988 hearing, the court decided that the default

judgment against Can Am would stand. Record at p. 104. The court then vacated the default judgments against George and McDonald, and granted each one ten days to answer or otherwise plead. Record at pp. 100–101.

On February 3, 1988, George and McDonald were granted an extension to February 13, 1988 to answer or otherwise plead to the complaint. A status hearing was set for February 17, 1988.

In open court on February 17, 1988, Halprin and Feldman jointly filed their Motion For Leave To Withdraw. In the Motion For Leave To Withdraw, Halprin and Feldman requested that the court grant them permission to withdraw as counsel, pointing to various examples of a lack of cooperation from their clients (including the disconnection of Mr. George's telephone in Calgary). The Motion For Leave To Withdraw was denied. Noting that George and McDonald had failed to answer or otherwise plead as to the complaint in the time granted by the court, PaineWebber moved to vacate the previous order vacating the previously entered default judgments. This motion of PaineWebber's was entered and continued to February 24, 1988.

On February 24, 1988, judgment was reinstated in favor of PaineWebber and jointly and severally against McDonald and George in the amount of $252,753.88. PaineWebber also was granted leave to file its motion for sanctions pursuant to Rule 11 and 28 U.S.C. § 1927. It is this motion for sanctions that the court rules on today.

On June 14, 1988, the court had the attorneys for all parties before it on a status hearing in the hope of clarifying some of the matters that were raised by the Motion For Sanctions. Few matters were resolved at this hearing. However, Feldman did tell the court that he was of the opinion that it was not an attorney's duty to investigate matters that a client tells the attorney. Halprin told the court at this status hearing that she was sure that she had filed her appearance form with the court.

In a letter to the court dated June 16, 1988 (copy to PaineWebber's counsel),

Halprin attempts to explain to the court why she had not filed her appearance and why McDonald, instead of Halprin, signed McDonald's Motion To Vacate. According to this letter, "McDonald apparently misunderstood my directions and signed both the motion and the affidavit.... my office staff, noting that it had been signed, filed the motion but inadvertantly omitted filing the appearance we had earlier prepared ...."

### Rule 11

■ Federal Rule of Civil Procedure 11 requires that all papers filed with the court are to be signed, and that by signing a paper, the signer is certifying that certain conditions exist as to that paper. Rule 11 also provides for mandatory sanctions against a signer who files a paper for which the required conditions have not been met. *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1433 (7th Cir.1987). Rule 11 states in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order

to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.Proc. 11.

 Rule 11 applies to every signed "pleading, motion, or other paper" (hereinafter collectively referred to as "papers") filed with a U.S. District Court. *Id.* Rule 11 applies to every statement and claim in a paper. *Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 1067 (7th Cir.1987). However, Rule 11 does not require that a paper be deemed sanctionable merely because "one argument or sub-argument in support of an otherwise valid … paper is unmeritorious." *Brown,* 830 F.2d at 1434. This "one meritorious argument" defense should not be viewed as a safe harbor by sloppy litigators: it is clear that "one sufficient … claim does not permit … a stream of unsubstantiated claims as riders." *Frantz,* 836 F.2d at 1067.

 Unlike prior provisions regarding sanctions, "sanctionability" under Rule 11 is not determined on a subjective basis. "The standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown,* 830 F.2d at 1435. Good faith alone is not a defense. As "[t]he test under Rule 11 is objective," "[a]n empty head but a pure heart is no defense." *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986). Similar to the negligence standard in tort law, the objective Rule 11 standard "makes no allowance for the particular circumstances of particular practitioners." *Hays v. Sony Corp. of America,* 847 F.2d 412, 419 (7th Cir.1988).

### PaineWebber's Motion For Rule 11 Sanctions

The briefs filed by both parties as to PaineWebber's Motion for Sanctions are full of irrelevant information that has no bearing on a motion for Rule 11 or § 1927 sanctions. From what the court can glean from its motion, PaineWebber is seeking sanctions against Can Am and its attorneys for its "filing (on October 27, 1987) of a motion to vacate the default judgment." PaineWebber's Motion for Sanctions Pursuant to Rule 11 and 28 U.S.C. § 1927 (hereinafter "Motion For Sanctions") at p. 1.

In regards to Rule 11, PaineWebber states three bases for seeking sanctions. First, PaineWebber charges that "Can Am had absolutely no reasonable basis for its assertion that it had a meritorious defense to PaineWebber's claims." Motion For Sanctions at p. 11. Second, PaineWebber alleges that Can Am's claim of " 'excusable neglect' was not warranted by existing law." *Id.* Third, PaineWebber asserts that Can Am brought the motion to vacate "for the improper purpose of delay or to increase needlessly the cost of litigation." *Id.* at p. 12. As to § 1927 sanctions, PaineWebber seeks these sanctions against counsel because counsel allegedly "intentionally abuse[d] the judicial process so as to cause unnecessary expense and delay." *Id.*

### Meritorious Defense

PaineWebber's first basis on which it claims that Rule 11 sanctions are appropriate arises from its contention that Can Am asserted an allegedly meritorious defense to the PaineWebber complaint, when, in fact, that defense had no reasonable basis in fact. It is hornbook law that in order to have a default judgment vacated, the moving party must be able to demonstrate that it has a meritorious defense to the complaint. J. Friedenthal, M. Kane & A. Miller, Civil Procedure § 12.6 at p. 575 (1985). This requirement of showing a meritorious defense prevents the needless protraction of litigation. C. Wright & A. Miller, Federal Practice & Procedure § 2857 at p. 161. It is certainly the requirement in this circuit. *Passarella v. Hilton International Co.,* 810 F.2d 674, 676 (7th Cir.1987); *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182, 185 (7th Cir.1982); *Lego Irrigational International Inc. v. First National Bank of Northbrook,* 108 F.R.D. 9, 11 (N.D.Ill. 1985).

As stated above, Can Am's "meritorious defense" that PaineWebber "dumped" the

CPR stock goes to PaineWebber's duty to mitigate damages. *See supra* p. 328. Failure to mitigate is an affirmative defense. C. Wright & A. Miller, Federal Practice & Procedure § 1273 at p. 322; *see, A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 397 (7th Cir.1984). As such, Can Am's assertion that PaineWebber "dumped" the CPR stock could have constituted a meritorious defense, but for the singular problem that it was not true; Can Am later admitted to this. *See supra* p. 328.

In analyzing this portion of PaineWebber's motion, this court will seek to determine whether Feldman, the signer of the paper in question, conducted the requisite "reasonable inquiry" that the paper "is well grounded in fact." Fed.R.Civ.Proc. 11. In his defense, Feldman contends that he did not have adequate time to conduct a thorough investigation. Feldman's Response at p. 5. Feldman states that he was first contacted regarding this case on October 5, 1987 and that a hearing was set for two days later. Feldman's Sur-reply at p. 5. However, as PaineWebber points out, Feldman did not appear at the October 7 hearing, and the Motion To Vacate was not filed until October 27, 1987. Reply Memorandum of PaineWebber Incorporated In Support Of Its Motion For Rule 11 Sanctions at p. 10.

■ The court will first consider the validity of Feldman's claim that he was under time constraints that prevented him from conducting an investigation. In determining whether an attorney's investigation into the factual foundation of a filing is reasonable, the court may consider the time constraints on the attorney. *S.A. Auto Lube*, 842 F.2d 946 at 949 (1988). However, the court here finds that Feldman was not under any serious time constraint that so impeded Feldman that he could not conduct a reasonable fact investigation prior to his filing of Can Am's Motion To Vacate.

In making this determination this court must consider the surrounding circumstances. *Brown*, 830 F.2d at 1435. At the hearing on October 5, 1987, this court ordered *McDonald* to file his motion to vacate by October 21, 1987. However, the court only *suggested* that if Can Am anticipated that it would file a motion to vacate, that Can Am should also file its motion by October 21. As it turned out, Can Am took six more days than was suggested to file its motion to vacate. These facts point out that Feldman was not, in fact, under the time constraint that he claims. First, the court ordered only McDonald to file his motion to vacate by October 21; the October 21 deadline was only *suggested* for defendant Can Am and George. Second, had Feldman properly pursued a reasonable investigation and found himself "strapped" for time, the proper course of action would be to ask the court for additional time in which to file Can Am's Motion To Vacate; it was not proper for Feldman to just file the less-than-adequately-investigated motion. Finally, the court can only infer from the fact that Feldman filed Can Am's Motion To Vacate almost a week after the court's suggested deadline is that Feldman was not overly concerned with "time constraints" in any event.

■ Having found that Feldman's "defense" is not tenable, the court now considers the contention that Feldman did not conduct the Rule 11–mandated pre-filing investigation into the factual foundation of Can Am's asserted "meritorious defense" in its Motion To Vacate.

In determining whether a reasonable investigation had taken place with regards to Can Am's claim of a meritorious defense, the court will look at a number of factors. The court will consider such things as the amount of time to investigate, the availability of corroborative evidence, and the reasonableness of relying on the client's statements. J. Solovy, E. Wedoff & A. Bart-Howe, Sanctions Under Section 2–611 of the Illinois Code of Civil Procedure at pp. 12–17 (1987) (Illinois Rule 2–611 is patterned after Federal Rule 11).

After considering the various circumstances present here, the court finds that Feldman did not conduct a reasonable investigation into the facts when he filed Can Am's Motion To Vacate. By the time Can

Am's Motion To Vacate was filed, counsel had over three weeks to conduct an investigation into the facts behind the claimed defense; this should have been adequate time to at least locate the "holes" in George's story. *See, S.A. Auto Lube,* 842 F.2d at 949. It was unreasonable for Feldman to rely solely on George's word. *See,* J. Solovy, E. Wedoff & A. Bart–Howe, *supra,* at p. 15. George's statements regarding the sale of CPR stock clearly could not be based on personal knowledge. For Feldman to rely on these second-hand representations was unreasonable. *See, Bockman v. Lucky Stores,* 108 F.R.D. 296, 298 (E.D.Cal.1985). Further, blind reliance on George's assertion that PaineWebber "dumped" the CPR stock was unreasonable because this assertion is suspect on its face. PaineWebber was "out" of a good deal of money with no clear outlook that it could collect on the PaineWebber debt. PaineWebber would have an incentive to maximize the return on the CPR stock sale, not minimize it by "dumping" the CPR stock on the market. *See, In re Curl,* 803 F.2d 1004, 1007 (9th Cir.1986).

If for no other reason, counsel should have conducted a better investigation since George was previously unknown to him. *See,* J. Solovy, E. Wedoff & A. Bart–Howe, *supra* p. 332, at p. 15. In fact, George was but a voice on a telephone line to Feldman until they met just prior to the January 20, 1988 hearing. Record at p. 56. Moreover, while the Alberta Stock Exchange may be somewhat distant to Chicago, it is not in Siberia. It was unreasonable for counsel, in the time before the filing of Can Am's Motion To Vacate, not to attempt to corroborate George's statements regarding the CPR stock sale through public records or by consulting an expert. *See, S.A. Auto Lube,* 842 F.2d at 949, *citing, Nassau–Suffolk IceCream v. Integrated Resources, Inc.,* 114 F.R.D. 684, 689 (S.D.N.Y.1987), *Calloway v. Marvel Entertainment Group,* 111 F.R.D. 637, 646–47 (S.D.N.Y.1986). More than likely, a simple telephone call from Feldman early on in attempting to corroborate George's story could have prevented the mess that subsequently occurred. A simple tele-

phone call is not too much for the court to expect from the attorneys that appear before it. *See, Dubisky v. Owens,* 849 F.2d 1034, 1038–39 (7th Cir.1988).

Despite Mr. Feldman's assertions to the contrary, Rule 11 does not view investigations into the facts behind a claim as a "luxury," *see,* Feldman Response at p. 5, and expecting a member of the bar to conduct a reasonable investigation is not "arrogant." *See,* Feldman Sur-reply at p. 6. Regardless of what Feldman told this court just two weeks ago, Rule 11 *does* impose on attorneys a duty to reasonably investigate factual matters told to them by their clients.

The court finds that by signing and filing Can Am's Motion To Vacate without conducting a reasonable investigation into the facts upon which the paper was grounded, Attorney Feldman's conduct is sanctionable under Rule 11.

*Excusable Neglect*

■ PaineWebber's second basis for seeking Rule 11 sanctions is that Can Am's claim of excusable neglect was not warranted by existing law. In order for a default judgment to be set aside, one of the requirements of a moving party is a showing that the "default judgment resulted from mistake, inadvertence, surprise or excusable neglect." *Ellingsworth v. Chrysler,* 665 F.2d 180, 184 (7th Cir 1981). In its motion to vacate, Can Am states that "there was excusable neglect on behalf of Timothy McDonald ... who, after being served with summons, took no action in this cause to notify the principals of the corporation...." Motion To Vacate at p. 1. PaineWebber argues that this claim of excusable neglect is not legally supportable. PaineWebber relies on two cases, *International Corporate Enterprises, Inc. v. Toshoku, Ltd.,* 71 F.R.D. 215 (N.D.Tex. 1976) and *Admiral Home Appliances v. Tenavision, Inc.,* 585 F.Supp. 14 (D.N.J. 1982), for its position.

At this point the court must point out that the court does not take up here the question of whether there actually was "excusable neglect" on Can Am's part.

The only question before this court regarding excusable neglect is whether Can Am's assertion in the Motion To Vacate about excusable neglect was warranted under the law, or made in good faith to extend, modify or reverse the law.

 A filing will not prompt a Rule 11 sanction if its legal arguments rest on settled precedent, or are questions of first impression, or are unsettled legal issues. *Supra* p. 331. In its Motion For Sanctions, PaineWebber points to two district court opinions, neither controlling on this court, one from Texas and one from New Jersey. On the other hand, Feldman in his sur-reply to the Motion For Sanctions cites the case of *Passarella v. Hilton International Co.*, 810 F.2d 674 (7th Cir.1987). The situation in *Passarella* parallels the situation that occurred in the present case (e.g., only notice was the original service, only a few weeks passed between service and entry of default judgment, apparently no willful pattern of disregard for the court's rules and orders). *Passarella*, 810 F.2d at 677. The *Passarella* case indicates that in the Seventh Circuit, the question of whether Can Am possessed the necessary excusable neglect is at least an unsettled legal issue. Accordingly, PaineWebber's motion to sanction Can Am under Rule 11 based on the "excusable neglect" argument in the Motion To Vacate must be denied.

### Improper Purpose

The third and final argument that PaineWebber presents in its Motion For Sanctions is that in filing the Motion To Vacate, Can Am was acting with in an improper purpose, namely to delay the litigation or increase the cost of the litigation. PaineWebber's arguments on this point are all result-oriented, that is, PaineWebber is arguing that because the Motion To Vacate ultimately failed, running up time and expenses while it was pending, Can Am should be sanctioned for this delay and expense.

 The court may infer an improper purpose when the effect of a paper is to delay the proceedings and increase the costs. *See,* J. Solovy, E. Wedoff & A.

Bart–Howe, *supra* p. 332 at p. 15, *citing, Davis v. Veslan Enterprises,* 765 F.2d 494, 500 (5th Cir.1985). Here, the court has already found that Can Am's Motion To Vacate was not based on a reasonable investigation and that Can Am had no meritorious defense. PaineWebber has shown that the filing of Can Am's Motion To Vacate caused delay and added expense. After objectively considering all of the surrounding circumstances, including the fact that Can Am would want to delay enforcement of the judgment against it, it is reasonable for this court to infer that Can Am's Motion To Vacate was filed for an improper purpose. Accordingly this court finds that Feldman filed Can Am's Motion To Vacate with an improper purpose, namely as a dilatory tactic.

### PaineWebber's Motion For Sanctions Under § 1927

Title 28, United States Code, Section 1927 states in part:

> "Any attorney ... who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

28 U.S.C. § 1927.

In its motion, PaineWebber states that it is bringing this motion with the intention to "recover costs, expenses and attorneys' fees occasioned by Can Am's filing (on October 27, 1987) of a motion to vacate the default judgments...." Motion For Sanctions at p. 1.

 Section 1927 "envisions a sanction against an attorney only when that attorney both (1) multiplies the proceedings, and (2) does so in a vexatious and unreasonable fashion." *Overnite Transportation Co. v. Chicago Industrial Tire Co.,* 697 F.2d 789, 794 (7th Cir.1983). While this language may appear to call for a subjective analysis, the court may proceed in analyzing a § 1927 motion utilizing an objective standard (just like a Rule 11 motion). *Knorr Brake Corp. v. Harbil, Inc.,* 738 F.2d 223, 227 (7th Cir.1984).

■ In *Knorr Brake,* the Seventh Circuit held that "before a court may assess fees under section 1927, the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis." *Id.* However, in a recent case, the Seventh Circuit, referring to *Knorr Brake,* held that "the intent requirement ... may be satisfied by showing reckless conduct by an attorney." *Ordower v. Feldman,* 826 F.2d 1569, 1574 (7th Cir.1987). Further, the court need not find that an attorney acted with malice in order to invoke § 1927. *Knorr Brake,* 738 F.2d at 227.

■ Based on the totality of the surrounding circumstances and on the record before this court, the court finds that the filing of the Motion to Vacate was apparently a delaying action on the part of Feldman. While this court finds that there was no malice involved on counsel's part, Feldman's conduct was reckless. This recklessness arises primarily because counsel conducted no investigation to determine the credibility of a purported client whom counsel had never seen. Accordingly, PaineWebber's motion to impose sanctions under § 1927 is granted due to the reckless conduct of Feldman.

### Sanctions

■ Having found sanctionable conduct under Rule 11 and § 1927, the court must now impose sanctions. Section 1927 limits the court to awards of "excess costs, expenses, and attorneys' fees reasonably incurred...." 28 U.S.C. § 1927. However, the court has determined that the appropriate and reasonable sanction for Feldman's Rule 11 violations is likewise an award of the "excess costs, expenses, and attorneys fees reasonably incurred." Therefore, the sanction that is discussed below will be the same sanction for both the Rule 11 violations and the § 1927 violation. As the sanction that the court imposes here is substantial, the court will discuss the reasons for, the computation of, and the equitable considerations behind the sanction. *Flip Side Productions, Inc. v. JAM Productions, Ltd.,* 843 F.2d 1024, 1037 (7th Cir.1988).

### Reasoning

The so-called "American Rule" mandates that a party in litigation is responsible for his own legal fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The principal exception to the American Rule is when one side acts in bad faith. *In re TCI Ltd.,* 769 F.2d 441 (7th Cir.1985). "The principle underlying § 1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really *does* bear the costs and does not foist expenses off on its adversaries." *Id.* at 446 (emphasis in original).

Here, defense counsel "foisted" upon PaineWebber the costs of investigating and researching Can Am's claims regarding the alleged "meritorious defense." Therefore, it is appropriate that as a sanction for the sanctionable conduct found here, that the court order attorney Feldman to compensate PaineWebber for those attorney's fees incurred attributable to investigating, researching and fighting Can Am's claimed meritorious defense. *See, e.g., Flip Side Productions,* 843 F.2d at 1037. The court views this sanction as being both a method of shifting litigation costs to the responsible persons and as a way of deterring future conduct of this type.

The court will not award any attorney's fees attributable to work performed by PaineWebber's counsel with regards to Can Am's claim of excusable neglect. This court found above that the excusable neglect argument had some basis in the law and was not sanctionable. It would not be proper for this court to shift to Feldman the cost incurred by PaineWebber's attorneys in researching and briefing a non-frivolous, potentially colorable claim raised by Can Am.

Further, this court will not award attorney's fees to PaineWebber in connection with the excusable neglect claim since this claim arose in large part because PaineWebber chose not to serve Can Am's registered agent, but chose instead the un-

usual tactic of serving McDonald with Can Am's process. In awarding sanctions, "the court must consider to what extent a ... party's injury ... was self-inflicted." *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988).

■ The court will, however, award a reasonable amount of attorney's fees for PaineWebber's counsel to research, prepare and prosecute its Motions For Sanctions. This portion of the fee award may at first appear to be inconsistent with the "American Rule's" philosophy that each party is responsible for his own costs. However, the Seventh Circuit appears to endorse the idea of awarding these Rule 11 prosecution fees, preferring to view them as "an expense incurred as a result of the sanctioned conduct." *Ordower v. Feldman*, 826 F.2d at 1576. Applying a pragmatic analysis, awarding fees for bringing a proper Rule 11 motion is necessary because Rule 11's value as a deterrent would be diminished if the cost of obtaining a fee award diluted the award obtained. *See*, *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C.Cir.1985).

*Computation*

In PaineWebber's Motion For Sanctions, PaineWebber requested attorney fees for the legal work that it performed from the day Can Am's Motion To Vacate was filed through to the day that PaineWebber filed its Motion For Sanctions. Attached to the Motion For Sanctions was an affidavit from L. Andrew Brehm, an attorney for PaineWebber, that gave a daily detail of attorney's fees for the period requested by the Motion For Sanctions.

The court finds the hourly rates contained in the affidavit reasonable in view of the experience and professional status of the personnel involved.

The court analyzed the Brehm affidavit and its accompanying schedule so as to determine from the descriptions of the work performed the reasonable amount of fees and costs to award. In accordance with the foregoing, the court adjusted the number of hours requested by PaineWebber so as to eliminate time spent with regards to the topics of "excusable neglect" and the service of process on Can Am. The court also adjusted the hours requested so as to allow a reasonable number of hours for the preparation and prosecution of the Rule 11 motion. Finally, the court adjusted the number of hours requested so as to eliminate excessive time which PaineWebber did not properly mitigate. *See, Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988).

From the above analysis and adjustments, the court finds that the reasonable attorney's fees to be awarded are as follows:

| Name | Hours | Rate | Extension |
|---|---|---|---|
| L. Andrew Brehm | 16.7 | $110/hour | $1,837 |
| Karen A. Mieszala | 2.9 | $ 70/hour | $ 203 |
| Daniel M. Blouin | 6.0 | $ 60/hour | $ 360 |
| TOTAL | | | $2,400 |

■ The Brehm affidavit mentions $60 in costs for several express deliveries to Alberta. As there is no explanation in the affidavit as to the necessity of using an express delivery service (as opposed to, for example, first class mail) these costs will not be allowed.

*Equitable Considerations*

*Can Am's Liability*

■ As was previously stated, Rule 11 allows a court to "impose sanctions upon the person who signed it [a paper], a represented party, or both." Fed.R.Civ. Proc. 11. The court has found that Can Am's Motion To Vacate was sanctionable. In allocating sanctions, the court must "ascertain the extent to which responsibility for the violation rests with client or counsel and to apportion fees appropriately between the two of them." Sanctions, *supra* p. 330, at p. 127. Having considered the facts surrounding this case, and having heard the in-court testimony of Can Am's president, Mr. George, and having observed George's demeanor on the witness stand, this court must agree with Feldman's assessment: George lied to Feldman. Feldman's Surreply at p. 7. While this court has found that the counsel for the defendants have failed in their obligations

under Rule 11, this court additionally finds that due to the deceptions committed by its president, Can Am was equally responsible for the Rule 11 violation. Accordingly, the court finds Can Am to be jointly and severally liable in the sanctions imposed by the court.

### Additional Hearing

As this court has determined that Rule 11 sanctions are in order based on the record before this court, and having applied an objective standard in determining sanctionability, no additional hearing is required before the court can order the sanctions. Sanctions, *supra* p. 330, at p. 123, *citing, Brown v. National Board of Medical Examiners*, 800 F.2d 168, 173 (7th Cir. 1986).

### Attorney Halprin

■ In reviewing the record in this case, the court noted several disturbing irregularities with regard to Attorney Judith Halprin's conduct. First, the record in this case indicates that to date, attorney Halprin has not filed with the Clerk of the Court an appearance form as called for in the Local Rules. N.D.Ill.Gen.R. 3.14(d). Halprin has represented herself to this court throughout this litigation as the attorney for defendant McDonald, yet apparently did not file the required appearance form. In accordance with Local General Rule 3.14(e), this court is compelled to find Halprin in contempt of this court. N.D.Ill. Gen.R. 3.14(e) ("An attorney who fails to file an appearance form where required to do so by this Rule *will be found to be in contempt* of this Court." (emphasis added)); *cf., Brown*, 830 F.2d at 1433 ("shall impose" language of Rule 11 requires court to impose a sanction).

Second, when this court asked Halprin at the January 20 hearing whether she had her appearance on file, she unhesitatingly told this court that she had. This was not true.

■ Third, Halprin filed with this court McDonald's Motion To Vacate which was signed by McDonald, not Halprin. This signing was in violation of Rule 11. Rule 11 states that every filing of a "party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name". Fed.R.Civ.Proc. 11.

■ In her defense, Halprin wrote a letter to the court detailing how these mistakes occurred due to a misunderstanding by her client and mistakes by her office staff. Even accepting Halprin's explanations as true, this court does not find them to be adequate excuses. First, an attorney is responsible for his non-lawyer staff and should ensure that the staff's actions are proper. *See*, Model Rules of Professional Conduct, Rule 5.3. Second, the court finds that these incidents, taken as a whole, merely point out that Halprin's "conduct reflects a disregard for the orders and rules of court as well as the professional courtesy that attorneys have a right to expect." *First Interstate Bank of Nevada v. Nelson*, No. 80 C 6401, slip op. (N.D.Ill. June 9, 1986) [available on WESTLAW, 1986 WL 6928].

There is really no excuse for not filing an appearance form. "Filing an appearance form should be as automatic as completing a certificate of service. Inadvertance is no excuse for violating Rule 3.14." *Strong v. Fairman*, 676 F.Supp. 161 (N.D.Ill.1987). "[T]he penalty for that omission is a contempt citation and a fine." *In re: Mandalay Shores Cooperative Housing Association, Inc.*, 63 B.R. 842 (N.D.Ill.1986). Likewise, there is no excuse for telling the court something that is not truthful. Halprin either knew or should have known that her appearance was not on file. Halprin misled the court, and while no significant damage resulted, her conduct was nonetheless contemptible.

Finally, McDonald's Motion To Vacate clearly was filed in blatant violation of Rule 11. While other jurisdictions may be willing to brush this type of violation aside as "merely a technical defect," *Edwards v. Groner*, 116 F.R.D. 578, 579 (D.Virgin Islands 1987); *Grant v. Morgan Guaranty Trust Co. of New York*, 638 F.Supp. 1528, 1531–32 at n. 6 (S.D.N.Y.1986), the courts in the Seventh Circuit *must* impose sanc-

tions on every serious violation of Rule 11. *Brown*, 830 F.2d at 1433.

In determining the appropriate fine for Halprin's contempt for failing to file her appearance, the court takes into consideration that Halprin has been in this case for over eight months, and had not filed her appearance in all that time. The court notes that the maximum fine under the Local Rules for this type of contempt is $50. N.D.Ill.Gen.R. 3.14(e). The court feels that in this instance the maximum $50 fine is both appropriate and reasonable.

As for Halprin misleading this court by telling it that she had her appearance on file when in fact she did not, the court finds Attorney Halprin in contempt and fines her $100.

As for the Rule 11 violation for filing a paper signed by a party when said party was in fact represented by counsel, the court finds that it is both reasonable and appropriate to fine Attorney Halprin for the deterrent effect that it might achieve. Accordingly, the court fines Halprin $250 for the above-mentioned violation of Rule 11. Further, as this court finds that it was Attorney Halprin that was primarily responsible for this Rule 11 violation, and as the fine is imposed to have a deterrent effect on Halprin, defendant McDonald is not found to be jointly liable in this sanction; it is imposed on Halprin alone.

### Order

In accordance with the findings and determinations of this court as stated above, the court finds Jerome Feldman and Can Am Financial Group, Ltd. to be jointly and severally liable for the sanction imposed by this court in the amount of $2,400. The court orders Jerome Feldman and Can Am Financial Group, Ltd. to pay that amount to PaineWebber, Incorporated no later than July 15, 1988. It is further ordered that a proof of payment is to be filed with the Clerk of this Court no later than July 22, 1988.

In accordance with the findings and determinations of this court as stated above,

the court finds Judith A. Halprin to be sanctionable under Rule 11 and in contempt of this court and fines her a total of $400 for these infractions. The court orders Judith A. Halprin to pay that amount to the United States Treasury, through the Clerk of this Court, no later than July 15, 1988. It is further ordered that a proof of payment is to be filed with the Clerk of this Court no later than July 22, 1988.