The TERMINIX INTERNATIONAL
COMPANY, L.P., Plaintiff,

v.

Michael and Joanne KAY, Defendants.

Civ. A. No. 92–5782.

United States District Court,
E.D. Pennsylvania.

Sept. 3, 1993.

Mitchell S. Pinsly, Philadelphia, PA, for plaintiff.

Lawrence Hannaway, Philadelphia, PA, for defendants.

### MEMORANDUM ORDER

ROBRENO, District Judge.

AND NOW, to wit, this 3d day of September, 1993, upon consideration of Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (Document No. 13) and Memorandum of Law in support thereof; Plaintiff's Response to Defendants' Motion for Sanctions (Document No. 16); Defendants' Memorandum of Law

in support of their Motion for Sanctions (Document No. 17); Plaintiff's Reply to Defendants' Memorandum of Law (Document No. 18); the Affidavit of Lawrence Hannaway, Esq., dated January 29, 1993 (Document No. 19); Plaintiff's Supplemental Memorandum of Law (Document No. 20); and the Affidavit of Mitchell S. Pinsly, Esq., dated February 4, 1993 (Document No. 21); and upon consideration of Plaintiff's Motion to Dismiss Without Prejudice Pursuant to Federal Rule of Civil Procedure 41(a)(2) (Document No. 15) and Memorandum of Law in support thereof; it is hereby **ORDERED**:

1. Defendants' Motion for Sanctions (Document No. 13) is **GRANTED** pursuant to Fed.R.Civ.P. 11. Plaintiff's counsel is directed to pay defendants $5,043.88;

2. Plaintiff's Motion to Dismiss (Document No. 15) is **GRANTED** pursuant to Fed. R.Civ.P. 41(a)(2), without objection by defendants; and

3. This case shall be marked **CLOSED.**

The Court grants this relief for the following reasons:

## I. BACKGROUND

1. Plaintiff The Terminix International Company, L.P., brought this action against defendants Michael and Joanne Kay alleging that defendants had published defamatory communications concerning plaintiff and had harmed plaintiff's goodwill among current and prospective customers of plaintiff.

2. Plaintiff is engaged in the business of termite and pest control. Defendants were customers of plaintiff. On or about April 19, 1992, at the request of defendants and for consideration, plaintiff treated defendants' residence for termite infestation. Defendants contend that as a result of the actions of plaintiff and its agents, their residence became contaminated with "at least hundreds of gallons of oil." *Defendants' Memorandum of Law* (Document No. 13–2) at 1.

3. A dispute, therefore, arose as to whether plaintiff was liable for the alleged contamination of defendants' residence and, if so, what compensation defendants should receive as a result of plaintiff's alleged action.

4. When the parties were unable to resolve the matter, *inter se,* defendants erected the following sign on their residential property:

DANGER
TERMINEX [sic] HAZARDOUS WASTE SITE
TERMINEX [sic] CONTAMINATED OUR HOME
POISONED OUR FAMILY
FAMILY OF 6 HOMELESS SINCE APRIL
TO HEAR TERMINEX [sic] LIE CALL 889–1639
TO HEAR THE TRUTH CALL 666–1096
OVER $500,000 DAMAGE

5. Together with the complaint, plaintiff filed a motion for a temporary restraining order, alleging that the statements made by defendants were actionable *per se* under Pennsylvania law and seeking to enjoin defendants from posting on defendants' property the sign containing the allegedly defamatory statements.

6. On October 11, 1992, Judge Ludwig of this Court, to whom the case was initially assigned, held a conference with counsel for the parties. At the conference, defendants agreed to remove the sign while settlement negotiations were conducted by the parties.

7. On October 19, 1992, the case was transferred to my docket. On November 10, 1992, after a telephone conference with the parties, the Court issued an Order that converted the motion for a temporary restraining order into one for a preliminary injunction, with the consent of the parties. The Order further required defendants to file an answer by November 16, 1992, allowed the parties to conduct limited discovery, required the submission of proposed findings of fact and conclusions of law by December 3, 1992, and scheduled a hearing for December 11, 1992.

8. On December 3, 1992, plaintiff submitted its proposed findings of fact and conclusions of law, together with a supporting memorandum. Plaintiff contended that it was entitled to a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a), "restraining Defendants from posting,

erecting and/or publishing the subject defamatory sign or any similar sign." *Plaintiff's Memorandum of Law in support of its Motion for a Preliminary Injunction* (Document No. 10–2) at 1. Plaintiff argued that:

This sign is blatantly directed toward Terminix and is in plain view of both Terminix's present and prospective customers, as well as the general public. Defendants' sign contains false and accusatory statements which have caused harm to Terminix's goodwill, business reputation and standing in the community. In addition, the publication of Defendants' sign is threatening harm to Terminix's future business relationships with both present and prospective customers.

*Id.*

9. On December 10, 1992, defendants submitted their proposed findings of fact and conclusions of law as well as a memorandum of law. The essence of defendants' position was that plaintiff would not be able to demonstrate the threat of immediate and irreparable harm or a clear right to relief.

10. The Pennsylvania Supreme Court has previously addressed the issue of whether a prior restraint of speech, such as plaintiff sought here, is available under Pennsylvania law. *See Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155 (1978). *Willing* involved an action by a law firm to enjoin a former client from stating on a sandwich board sign, which she wore while parading in front of the law firm's office building, that the law firm had stolen money from her. The Pennsylvania Supreme Court reversed the grant of an injunction against the former client's publication of the statements contained on the sign. The Court stated:

This case raises serious and far reaching questions regarding the exercise of the constitutional right to freely express oneself. We believe the [injunctive] orders issued by the Superior Court and by the

trial court in the instant case are clearly prohibited by Article I, Section 7 of the Pennsylvania Constitution and by *Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59, *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). In *Goldman Theatres* we held that Article I, Section 7 prohibits prior restraint on the exercise of an individual's right to freely communicate thoughts and opinions....

393 A.2d at 1157.

11. Recently, the Third Circuit Court of Appeals, in *Kramer v. Thompson*, 947 F.2d 666 (3d Cir.1991), extensively discussed the *Willing* rule. In *Kramer*, the district court directed a verdict in favor of the plaintiff at the close of plaintiff's case at trial, determining the defendant's statements to be libelous *per se. Id.* at 668. After trial, the district court issued a permanent injunction prohibiting the defendant from making further statements about the plaintiff of the type determined to be libelous. *Id.* The Third Circuit overturned the injunction, noting that in *Willing* the Pennsylvania "Supreme Court ... stood firmly behind the traditional bar" that equity will not enjoin a defamation.[1] *Id.* at 675.

12. In the present action, both plaintiff's and defendants' counsel, prior to filing their respective pleadings, ignored the *Willing–Kramer* authority. Further, neither plaintiff nor defendants in their pre-hearing submissions brought to the Court's attention the Pennsylvania rule recognized in *Willing* and *Kramer* that equity will not prospectively enjoin a defamation.[2]

13. On December 11, 1992, immediately prior to the hearing on plaintiff's motion for a preliminary injunction, the Court advised counsel for both parties that its own independent research had uncovered the *Willing–Kramer* line of authority and that it appeared to the Court that the relief sought by

---

1. The actual holding of *Kramer v. Thompson*, 947 F.2d at 675–80, was premised upon the prediction that the Pennsylvania Supreme Court would not prospectively enjoin a defamation even when a jury had already determined that the defendant's statements were libelous.

2. Plaintiff cited *Kramer v. Thompson* in its Memorandum of Law in support of its Motion for a Preliminary Injunction, but only for the proposition that "libelous speech is not protected by either the United States or the Pennsylvania Constitutions." *Plaintiff's Memorandum of Law in support of its Motion for a Preliminary Injunction* (Document No. 10–2) at 9.

plaintiff was not available under Pennsylvania law.

14. Despite the Court's advice, plaintiff chose to proceed with its proofs at the hearing. The hearing lasted one half day, and at its conclusion the Court took the matter under advisement. Later on the same date, plaintiff advised the Court that it was withdrawing its request for a preliminary injunction.

15. On December 14, 1992, defendants filed a motion for sanctions under Federal Rule of Civil Procedure 11. Defendants claimed, in essence, that under the *Willing–Kramer* line of authority, "plaintiff has no right to the equitable relief requested . . . and probably knew this before filing the [temporary restraining order] motion." *Defendants' Memorandum of Law in support of their motion for sanctions* (Document No. 13–2) at 5.

16. In an affidavit filed in support of the Rule 11 Motion, defendants' counsel states that he earned a juris doctor degree in 1971 and a master of law degree in 1974, that he has been active in the teaching and practice of law since that time, and that his current hourly rate is $250 per hour when he represents individuals or entities on an hourly basis, although his practice is generally limited to contingency fee cases. *Affidavit of Lawrence Hannaway, Esq., dated January 29, 1993* (Document No. 19) at 1–3. Counsel claims fees for 40.35 hours expended on the case, which at a rate of $250 per hour totals $10,087.50. *Id.* at 5–6. Plaintiff has not objected to the hourly rate requested by defendants' counsel and has specifically objected to only one entry in defendants' counsel's affidavit.[3]

17. On December 16, 1992, plaintiff filed a motion to dismiss without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), contending that because defendants had subsequently filed a toxic tort personal injury action against plaintiff in state court, judicial economy would "not be served if the parties litigate two actions in two different forums when the underlying facts of each action arise from the same nucleus of events." *Plaintiff's Motion to Dismiss* (Document No. 15) at 1–2. Defendants do not oppose the dismissal.

## II. DISCUSSION

### A. Application of Federal Rule of Civil Procedure 11.[4]

■ "Rule 11 imposes on any party who signs a document submitted to the court an

3. Plaintiff's counsel has filed an affidavit indicating that his records do not reflect the conference held between counsel on October 11, 1992, to discuss the motion for a TRO and stipulation. *Affidavit of Mitchell S. Pinsly, Esq., dated February 4, 1993* (Document No. 21) at 2. The total amount of time, however, claimed by defendants' counsel in this entry based on the conference is only 0.2 hours, which at an hourly rate of $250 equals $50. *Affidavit of Lawrence Hannaway, Esq., dated January 29, 1993* (Document No. 19) at 5. This objection involves a *de minimis* amount.

4. Federal Rule of Civil Procedure 11 reads as follows:

Rule 11. Signing of Pleadings, Motions, and Other Papers; Sanctions

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Fed.R.Civ.P. 11.

affirmative duty to conduct a reasonable inquiry into the facts and law before filing." *Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745, 751 (3d Cir.1993) (citing *Business Guides, Inc. v. Chromatic Communications Enters.*, 498 U.S. 533, 551, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991)). A proper inquiry requires an attorney to conduct "a reasonable investigation of the facts and a normally competent level of legal research [to] support the presentation." *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir.1986).

■ It is established in this Circuit that the Court "must apply an objective standard of reasonableness under the circumstances" in judging an attorney's conduct under Rule 11. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988); *see also Business Guides, Inc. v. Chromatic Communications Enters.*, 498 U.S. 533, 551, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991) ("[T]he applicable standard is one of reasonableness under the circumstances."); *Bradgate Assocs. v. Fellows, Read & Assocs.*, 999 F.2d 745, 751–52.

"When a district court examines the sufficiency of the investigation of facts and law, it 'is expected to avoid using the wisdom of hindsight and should test the signer's conduct by [asking] what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *Id.* at 752 (quoting *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1950, 118 L.Ed.2d 554 (1992)).

In this case the relevant inquiry is two-fold: (1) whether the *Willing–Kramer* authority was controlling on the issue of the relief sought by plaintiff, i.e., an injunction; and (2) whether it was reasonable under the circumstances for plaintiff's counsel to have filed a complaint, to have moved for an injunction, and to have submitted its findings of fact, conclusions of law, and memorandum of law in support thereof without considering controlling precedent contrary to its position.

The answer to the first issue, that the *Willing–Kramer* authority is controlling, is not in serious doubt. *See Kramer v. Thompson*, 947 F.2d at 670 ("[T]he Pennsylvania Constitution does prohibit a judge from enjoining future libelous speech . . . ."). The instant case, like *Willing* and *Kramer*, involved an effort by the plaintiff *to enjoin* prospectively defendants from publishing alleged defamatory statements about the plaintiff.

■ The second issue, whether it was reasonable under the circumstances for plaintiff's counsel to have signed and filed pleadings in this action without considering the controlling authority, is also not a difficult one to decide. Plaintiff's counsel admitted that he was unaware of the *Willing–Kramer* authority until it was pointed out by the Court at the hearing on the motion for a preliminary injunction. A party's position, even if superficially plausible, cannot be accepted as a good faith argument for the extension of the existing law if, in framing the pleadings, the party ignores the controlling authority. *See Rodgers v. Lincoln Towing Serv.*, 771 F.2d 194, 205 (7th Cir.1985); *see also Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir.1987) (failure to cite leading authority suggests cursory or minimal legal research).

Nor is plaintiff's counsel's inadequate legal research justified by the press of obtaining a temporary restraining order. Even assuming that the time required to research the cause of action asserted was not available at the time that the initial complaint was filed, there is no justification for the failure to take into account the controlling authority in the proposed findings of fact, conclusions of law, and supporting memorandum, which were not filed until two months after the initial action had been commenced.

■ Plaintiff now argues that, in any event, *Willing* and *Kramer* are distinguishable from the instant case in that in those cases movants were seeking a permanent injunction, while here plaintiff was only seeking a temporary one. *Plaintiff's Supplemental Memorandum of Law* (Document No. 20) at 2. Plaintiff cites no authority for the proposition that the apparent unconditional prohibition contained in the Pennsylvania Constitution barring "a judge from enjoining future libelous speech," *Kramer v. Thompson*, 947 F.2d at 670, is applicable only to permanent injunctions and not to temporary ones. More fundamentally, this argument is

specious. Rule 11, of course, is not intended to curtail robust advocacy for an extension of existing law, but such argument must be made in the pleadings that are filed. Therefore, it is irrelevant whether counsel can, in retrospect, and upon reflection or further research, distinguish the controlling authority or even make a good faith argument for an extension of the law. The point of Rule 11 is to require "a normally competent level of legal research," *Lieb v. Topstone Indus.*, 788 F.2d at 157, *prior* to the signing and filing of pleadings, not afterwards. Therefore, the Court concludes that plaintiff's counsel's ignorance of the controlling authority was not reasonable under the circumstances.

### B. *Appropriate Sanctions.*

■ Courts have broad discretion in determining both the type and amount of Rule 11 sanctions. *Collins v. Walden*, 834 F.2d 961, 966 (11th Cir.1987). A court's judgment in determining the type and amount of Rule 11 sanctions may be guided by a number of elements, including the conduct of the parties. *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 197 (3d Cir. 1988). The court has the "discretion to tailor sanctions to the particular facts of the case.... [A] subjective test ... may be relevant in determining the form and amount of punishment or compensation.... [T]he court may decide that the circumstances warrant imposition of only part of the adversary's expenses...." *Lieb v. Topstone Indus.*, 788 F.2d at 157–58.

In this case, defendants have shown that they incurred legal fees as a result of plaintiff's counsel's violation of Rule 11. Clearly, had plaintiff's counsel conducted adequate legal research, defendants would have been spared this expense.

■ The Court recognizes that *defendants'* counsel also failed to cite the controlling authority to the Court or to bring it to plaintiff's counsel's attention. This is particularly relevant in that defendants' counsel claims to have spent 13.7 hours [5] drafting pleadings to be filed and preparing for the hearing on the preliminary injunction. Under Rule 11, defendants' counsel had an independent duty to conduct a reasonable investigation into the law and either to have relied upon the controlling authority in framing defendants' pleadings or to have brought the controlling authority to the attention of the Court and opposing counsel. The Third Circuit has recognized that a Rule 11 movant has a duty to mitigate its fees and expenses "by using reasonable means to terminate the litigation and to prevent costs from becoming excessive." *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1094 (3d Cir.1988); *see also id.* at 1092. Had defendants' counsel undertaken a reasonable inquiry into the law prior to filing pleadings and in preparation for the preliminary injunction hearing, and had he brought to the attention of the Court and opposing counsel the controlling legal authority on a timely matter,[6] he may well have mitigated the additional legal expenses for which he now seeks compensation.

■ Therefore, because plaintiff's counsel's breach of Rule 11 was the result of neglect and not bad faith, and due to defendants' failure to mitigate fees and expenses, I will exercise my discretion, reduce defendants' request for reimbursement of fees and

---

5. Defendants claim counsel fees in this respect as follows:

November 15—16, 1992
 Preparation and filing of Answer to Motion for T.R.O.; Answer to Complaint, including consultation with Kays     4.5 hours
December 8—10, 1992
 Preparation and filing of proposed findings of fact and proposed conclusions of law and memorandum of law as per Court Order     4.2 hours

December 10, 1992
 Preparation for hearing on Motion for T.R.O.     5.0 hours

*Affidavit of Lawrence Hannaway, Esq., dated January 29, 1993* (Document No. 19) at 5–6.

6. At the end of plaintiff's case-in-chief at the hearing, defendants argued that the relief sought by plaintiff was not available under Pennsylvania law under the *Willing–Kramer* authority. This was perfunctory at best in that defendants simply repeated what the Court had advised the parties prior to the hearing.

costs by 50%, and award defendants $5,043.88.

Payment is to be made by plaintiff's counsel [7] to the defendants within 10 days of the date of this Order.

AND IT IS SO ORDERED.

---

7. Responsibility for payment should rightfully be imposed upon counsel and not on the client in that the breach in this case involved an issue of law solely within the competency of counsel. *See Blake v. National Casualty Co.,* 607 F.Supp. 189, 193 (C.D.Cal.1984). Moreover, while in-house corporate counsel was admitted *pro hac vice* in the litigation and was present at the hearing, in-house counsel did not sign the pleadings and therefore is not subject to sanctions under Rule 11. *See Mars v. Anderman,* 136 F.R.D. 351, 354 (E.D.N.Y.1989); *cf. Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 124, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989) ("Just as the requirement of signature is imposed upon the individual, we think the recited import and consequences of signature run *as to [that individual].*"). Therefore, the sanction is assessed against Mitchell S. Pinsly, Esq., the attorney who signed the pleadings, motions, and other papers on behalf of plaintiff prior to the hearing.