Victoria A. TAYLOR, f/k/a Victoria A. Iles, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 93–1124–MLB.

United States District Court, D. Kansas.

Sept. 20, 1993.

John C. King, Law Office of John C. King, Ltd., Wichita, KS, for plaintiff.

Emily B. Metzger, Office of U.S. Atty., Wichita, KS, for defendant.

### MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant's (the Government's) motion for sanctions against plaintiff Victoria A. Taylor and her counsel, John C. King, under Federal Rule of Civil Procedure 11. (Doc. 10). Mrs. Taylor originally brought this action seeking injunctive relief from the Government's efforts to collect sums allegedly owed on plaintiff and her former husband's joint tax return for 1986.[1] (Docs. 1 & 2). Specifically, Mrs. Taylor moved the court for an order enjoin-

---

1. Mrs. Taylor and her former husband agreed, in the couple's journal entry of divorce, to each pay one-half of their joint tax liability for 1986. Plaintiff apparently believed that the taxes had been paid by her former husband. (Doc. 1, p. 2; Doc. 14, p. 1). She claims that she did not actually become aware that the taxes were still due until late 1992. (Doc. 2, pp. 1–2; Doc. 14, p. 1).

ing the enforcement of a federal tax lien and wage levy. As the basis for her motion, Mrs. Taylor claimed that the Government had failed to send a notice of assessment and demand for payment to her "last known address" within sixty days of the assessment as required under 26 U.S.C. § 6303(a).[2] (Doc. 2, p. 1). She urged the court to find that this alleged lack of proper notice barred the Government's attempts to enforce its lien against her.

The matter was set for hearing in Wichita on Monday, April 26, 1993. Mrs. Taylor discussed the matter with her attorney, Mr. King, in a telephone conversation on the Sunday evening before the hearing. During the course of their conversation, Mrs. Taylor informed Mr. King that, while going through papers relating to her divorce, she had found a document sent to her by the IRS entitled "statement of adjustment to your account." A review of this document revealed that it included the notice of assessment and demand for payment which Mrs. Taylor had previously alleged she had not received. Upon this discovery, Mr. King advised Mrs. Taylor that she would have to dismiss her case. Mr. King then immediately called the U.S. Department of Justice in Washington, D.C. in an attempt to alert the Government's trial attorney, Mr. Charles S. Kennedy III, who was scheduled to appear the next day at the hearing in Wichita, that Mrs. Taylor's case was being withdrawn. Mr. King left a message with Mr. Kennedy's answering service and made further attempts to contact Mr. Kennedy in Washington. Having been unsuccessful, Mr. King then tried to ascertain the whereabouts of Mr. Kennedy in Wichita, but could not do so.

The next morning, April 26, 1993, the parties met as scheduled for the hearing. Mr. King disclosed to the court that Mrs. Taylor had found the notice of assessment and demand for payment among her papers and conceded the case. The Government subsequently filed a motion under Rule 11 seeking sanctions in the amount of $2,969.94 against both Mr. King and Mrs. Taylor. Shortly thereafter, Mr. King and Mrs. Taylor filed a brief in response to the Government's motion. On May 24, the court held a hearing on the motion.

### RULE 11 STANDARDS

■ Under Rule 11, the signature of an attorney or party on a pleading or any other paper presented in a federal court constitutes a certification that the signer has read the pleading or paper and that, "to the best of the signer's knowledge, information and belief, formed after reasonable inquiry" it is (1) not being interposed for any "improper purpose," (2) "well grounded in fact," and (3) "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. If there is a violation of this certification standard, Rule 11 *requires* the court to sanction the violator. *Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1136 (10th Cir. 1991); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985) ("Eastway I"), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The court can sanction the attorney who signed the pleading, the party he represents, or both, and the sanctions may include payment of the other party's "reasonable expenses incurred because of the filing … including a reasonable attorney's fee." Fed.R.Civ.P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990); *White v. General Motors Corp., Inc.*, 908 F.2d 675, 679 (10th Cir.1990).

■ Rule 11 clearly provides that an attorney is sanctionable for signing a pleading without first conducting a "reasonable inquiry." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 541, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991). The "reasonable inquiry" requirement mandates that an attorney stop, think, and assure himself of the legal and factual basis of a pleading before signing and

**2.** Section 6303(a) provides that the Government "shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax …, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address."

presenting it to the court. *See Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695, 701 (E.D.Mich.1985) (characterizing Rule 11 as the "stop and think" rule). Whether a reasonable inquiry was conducted and reasonable conclusions were drawn therefrom is governed by an objective standard. *Business Guides*, 498 U.S. at 549, 111 S.Ct. at 932–33; *Dodd Ins. Services v. Royal Ins. Co. of America*, 935 F.2d 1152, 1155 (10th Cir. 1991); *White*, 908 F.2d at 680. Thus, an attorney's good faith belief in the merit of factual allegations and legal claims asserted in a pleading is not sufficient to avoid Rule 11 sanctions. *White*, 908 F.2d at 680. Rather, the attorney's belief must be based on a reasonable inquiry and "in accord with what a reasonable, competent attorney would believe under the circumstances." *Id.* The attorney may not merely argue that "a competent attorney could have made a colorable claim based on the facts and law at issue; [he] must actually present a colorable claim." *Id.* All doubts as to whether a colorable claim has been presented are resolved in favor of the attorney against whom sanctions are sought. *Eastway I*, 762 F.2d at 254.

■■■ Rule 11's principal purpose is to deter the filing of frivolous claims and defenses by punishing those who do not meet the certification standard. Fed.R.Civ.P. 11, advisory committee's note to 1983 amendment (indicating that Rule 11 is intended to "check abuses" and "streamline the litigation process by lessening frivolous claims or defenses" through the imposition of "disciplinary sanctions").[3] However, the advisory committee notes to Rule 11 expressly state that it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment. Hence, while sanctions are clearly appropriate whenever a reasonable inquiry has or would have indicated that the legal or factual basis of a claim is untenable, when such inquiry merely reveals a likelihood of losing,

a lawyer does not violate Rule 11 by maintaining the claim.

## DISCUSSION

### I. *Motion for Sanctions Against Plaintiff's Attorney*

The Government's motion for Rule 11 sanctions against plaintiff's counsel, Mr. King, is predicated on two pleadings he signed and filed with this court: the complaint and the motion for preliminary injunction. The Government's chief contention against Mr. King is that he failed to conduct a "reasonable inquiry" into the factual and legal bases for these pleadings in violation of Rule 11's certification standard. The Government maintains that, had Mr. King conducted a "reasonable inquiry," he would have discovered that Mrs. Taylor could not meet the burden of proof required in order to enjoin the Government's attempt to enforce its federal tax lien. Thus, the principal issue presented by the Government's motion against Mr. King is whether Mr. King reasonably inquired into the relevant facts and the law governing Mrs. Taylor's claim before signing and filing the complaint and the motion for an injunction with this court.[4]

### A. *Factual Inquiry*

■■ With respect to Mr. King's prefiling inquiry into the factual basis for Mrs. Taylor's claim, the Government argues that a reasonable factual inquiry would have disclosed the section 6303 notice that was actually received by Mrs. Taylor and IRS records which indicated that the notice was timely sent. According to the Government, "[a] reasonable attorney would have requested that the plaintiff produce all her records relevant to the 1986 tax liability. If this had been done, [Mr. King] could have easily determined that the notice of assessment and demand for payment had been mailed by the Government and received by the plaintiff."

---

**3.** *See also Cooter*, 496 U.S. at 393, 110 S.Ct. at 2454 (characterizing Rule 11's central purpose as "to deter baseless filings"); *White*, 908 F.2d at 683 ("[D]eterrence is ... the primary goal of the sanctions.").

**4.** The government does not directly allege, nor is there any concrete evidence suggesting, that Mr. King interposed the complaint or motion for injunctive relief for an "improper purpose." Fed.R.Civ.P. 11. Therefore, that issue does not merit consideration.

(Doc. 11, p. 6). For his part, Mr. King maintains that he honestly and reasonably believed not only that Mrs. Taylor had not received the notice required by section 6303, but also that the IRS had not mailed that notice to the correct address. (Doc. 14, p. 4). Mr. King points to the following facts suggesting, at the time he filed the complaint and motion for an injunction, that the notice was not sent to Mrs. Taylor's "last known address" as required by section 6303(a): (1) Mrs. Taylor had not received the notice, (2) Mrs. Taylor had moved between the time her 1986 tax return was filed and the date the notice was sent, and (3) according to Mr. King's review of IRS records, Mrs. Taylor's change of address had not been posted in the IRS computer until after the notice was sent.

Based on its interpretation of Rule 11 and the evidence presented, the court believes that the factual inquiry Mr. King conducted into Mrs. Taylor's claim against the government was "reasonable." The court agrees with the Government that Rule 11 required Mr. King to investigate Mrs. Taylor's allegation that she had not received the notice of assessment and demand for payment. In conducting his factual inquiry, Mr. King could not simply rely on Mrs. Taylor as his sole source of facts; he was required to investigate for corroboration. However, an attorney is to some degree dependent upon his client's good faith and forthrightness in disclosing pertinent facts.[5] Moreover, an attorney's ability to investigate may be limited by his client's failure to keep important records and other data in an organized manner. With this in mind, the court concludes that although Mr. King was required to make a reasonable investigation into whether or not Mrs. Taylor had received the notice of assessment and demand for payment, Mr. King should not be held responsible for Mrs. Taylor's disorganization. Obviously, Mr. King had requested that Mrs.

Taylor look for and disclose any relevant records she might have in her possession. Otherwise, Mrs. Taylor would not have been looking for such records on the night before the hearing. Also, in view of Mr. King's response to the discovery of the notice, including his repeated attempts to locate the Government's attorney and notify him of the discovery, Mr. King does not appear to have acted in bad faith. Mr. King, in all likelihood, would not have responded in the manner he did unless he sincerely believed that the section 6303 notice had not been received. In short, resolving all doubts in favor of Mr. King, it does not appear that Mr. King violated the Rule 11 certification standard by failing to discover the section 6303 notice at an earlier date.

The court is also persuaded that Mr. King's inquiry into the IRS records was "reasonable." There is no real dispute as to whether Mr. King looked into the IRS records; in fact, Mr. King referred to them in the motion for a preliminary injunction. In that motion, Mr. King indicated that he was not disputing whether the IRS actually mailed a notice, but only whether the IRS had sent the notice to Mrs. Taylor's "last known address." Given Mr. King's sincere belief that Mrs. Taylor had not received the section 6303 notice, it was reasonable for him to assume that the notice had been mailed to a wrong address. The factual allegation that the notice was not mailed to Mrs. Taylor's "last known address," although substantiated only by this assumption, was sufficiently "well grounded in fact," within the meaning of Rule 11. In the court's opinion, an attorney should not be sanctioned merely because a fact that he sincerely and reasonably believes is true and upon which he reasonably bases a legal conclusion later turns out to be false.[6]

### B. *Legal Inquiry*

With respect to Mr. King's legal inquiry into Mrs. Taylor's claim, the Government

---

**5.** In *Business Guides,* the Supreme Court acknowledged that "[q]uite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading." 498 U.S. at 549, 111 S.Ct. at 932.

**6.** Under Rule 11, courts are to "test the signer's conduct by inquiring what was reasonable to

believe at the time the pleading, motion, or other paper was submitted," and not to utilize the "wisdom of hindsight" in determining whether a Rule 11 violation has occurred. Fed.R.Civ.P. 11 advisory committee's note to 1983 amendment; *Eastway I,* 762 F.2d at 254.

argues that a reasonable legal inquiry would have disclosed that the Anti–Injunction Act, 26 U.S.C. § 7421, bars actions such as Mrs. Taylor's seeking to enjoin the IRS from collecting overdue taxes. Furthermore, according to the Government, "a reasonable attorney would not have brought this litigation even if the notice of assessment and demand for payment had not been sent because the liability would still, ultimately, have to be paid by his client." (Doc. 10, pp. 8–9). Mr. King, on the other hand, contends that, given his reasonable belief that the Government had not sent a section 6303 notice to Mrs. Taylor's "last known address," he had a sound legal basis for presenting a claim for injunctive relief. Mr. King argues that the Government had no right to enforce its lien unless a proper section 6303 notice was given and, therefore, that the Anti–Injunction Act was not a barrier to Mrs. Taylor's claim.

■■■■■ The Anti–Injunction Act, 26 U.S.C. § 7421(a), generally bars any action seeking to enjoin the collection of taxes by the Government. Exceptions to the Act are expressly provided for, but section 6303 is not among those listed.[7] A more general, but narrow, exception to the Act also exists if (1) the taxpayer shows that there are "extraordinary circumstances causing irreparable harm" for which he has no "adequate remedy at law," and (2) it is apparent that, under the most liberal view of the law and the facts, the Government "cannot establish its claim." *Enochs v. Williams Packing &*

*Navigation Co.,* 370 U.S. 1, 6–8, 82 S.Ct. 1125, 1128–29, 8 L.Ed.2d 292 (1962). Absent a finding that the taxpayer's claim fits within one of these exceptions, the taxpayer must make full payment of the assessment against him before his claim against the government can be brought. *See Flora v. United States,* 362 U.S. 145, 164, 80 S.Ct. 630, 640, 4 L.Ed.2d 623 (1962).

■■■■ The results of Mr. King's legal inquiry into whether the Anti–Injunction Act barred Mrs. Taylor's claim for injunctive relief are manifested in the complaint and motion for an injunction. In the complaint, Mr. King argued that because the Government had failed to meet the notice requirements of section 6303, the Government's enforcement of its lien was not legal and the Anti–Injunction Act did not apply.[8] (Doc. 1, p. 3). As legal authority for this proposition, Mr. King cited two cases: *Commissioner v. Shapiro,* 424 U.S. 614, 617, 96 S.Ct. 1062, 1066, 47 L.Ed.2d 278 (1976); *Rodriguez v. United States,* 629 F.Supp. 333, 341 (N.D.Ill.1986). The court has reviewed this authority and finds that it provided little support for Mrs. Taylor's claim. The cases cited and arguments set forth by the Government are far more persuasive.[9] Nevertheless, the cases cited by Mr. King do state the relevant legal standards and, to some degree, suggest that a taxpayer in Mrs. Taylor's circumstances might be able to obtain injunctive relief despite the Anti–Injunction Act.

7. Sections 6212(a), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b) are the only stated exceptions.

8. Mr. King cited *Guthrie v. Sawyer,* 970 F.2d 733 (10th Cir.1992) in the complaint as support for his contention that the IRS failed to send proper notice under section 6303. (Doc. 1, p. 2). *Guthrie* appears to indicate that the IRS does not satisfy its obligation to mail a notice unless that notice is sent to the taxpayer's "last known address." *Id.* at 737. *Guthrie* also discusses the Anti–Injunction Act and possible exceptions thereto. *Id.* at 736–37.

9. The Government points to *James v. United States,* 970 F.2d 750, 756–57 (10th Cir.1992), in which the Tenth Circuit held that a taxpayer who sought injunctive relief from a tax levy based on the government's alleged failure to send a notice of levy could not meet the exception to the Anti–Injunction Act set forth in the *Williams Packing*

case. The court found that the taxpayer had been unable to show either "extraordinary circumstances" or that the IRS ultimately would be unable to prevail. *Id.* at 757. The Government and Mr. King both point to *United States v. Berman,* 825 F.2d 1053 (6th Cir.1987). In that case, the court held that the notice provision in section 6303(a) only protects the taxpayer from the summary powers of the IRS to collect taxes administratively, not its right to proceed, if necessary, against the taxpayer in a civil action. *Id.* at 1060.

The court is persuaded by these cases that the Government's arguments are correct: (1) Mr. King would not have been able to show that Mrs. Taylor's claim fit within the *Williams Packing* exception, and (2) Mrs. Taylor ultimately would have had to pay her back taxes, one way or another.

In *Shapiro*, the first case cited by Mr. King, the United States Supreme Court held that a taxpayer who showed that, unless injunctive relief was allowed, he would be deported and imprisoned by a foreign government and that the Government had failed to provide a factual basis for its tax assessment against him, had set forth sufficient evidence to overcome a motion for dismissal based on the Anti–Injunction Act. *Id.* 424 U.S. at 624–34, 96 S.Ct. at 1070–74. The Court found that the Government had to disclose the basis for its assessment in order to give the taxpayer an adequate opportunity to meet the *Williams Packing* standard. *Id.* at 626–27, 96 S.Ct. at 1070. In the second case cited by Mr. King, *Rodriguez*, a district court construed *Shapiro* as extending an exception to the Anti–Injunction Act for taxpayers who have not been sent proper notice under section 6303. 629 F.Supp. at 340–41 ("[T]he Supreme Court has extended [the exception expressly provided for .section 6213(a)] in the Anti–Injunction Act to cases where the levy was made without the § 6303 notice of tax liability and demand for tax required by § 6331.").[10]

Although *Shapiro* and *Rodriguez* are distinguishable from the present case, the court believes that Mr. King's reliance on them was not entirely misplaced.[11] Mr. King did not simply fail to research the law or completely ignore existing law in making his legal arguments, no matter how incomplete and unpersuasive those arguments may have been. Mr. King cited legal authority which, although largely not supportive of Mrs. Taylor's claim, set forth the standards applicable to the adjudication of that claim and made legal arguments which, although unlikely to succeed, were not entirely without merit.[12]

As discussed *supra*, Rule 11 was not intended to chill a lawyer's creativity in advancing factual and legal theories. Thus, Mr. King must be given some latitude in the formulation of his legal arguments. This is particularly true given the complexity of the issues that were the subject matter of Mr. King's legal inquiry. *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 875 (5th Cir. 1988) (listing "the complexity of the factual and legal issues" among those factors upon which the determination of whether a reasonable inquiry was conducted depends); *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 95 (3d Cir.1988). Mr. King was attempting to "untangle the network of assessment, notice, demand, lien, levy and other tax statutes that two federal courts have characterized as 'unworkable' and 'so complicated that even the IRS admits it cannot completely understand

---

**10.** The *Rodriguez* court noted that, although a few courts had declined to allow taxpayer suits for lack of section 6303 notice, those cases predated *Shapiro*, which "would have allowed an action to enjoin a levy for lack of § 6303 notice." 629 F.Supp. at 339 n. 2.

**11.** In a taxpayers' action to quiet title to property being seized by the IRS, the Tenth Circuit had occasion to cite *Rodriguez* for the proposition that "[w]hen the taxpayer challenges the procedural regularity of the tax lien, and not the validity of the tax assessment, sovereign immunity is waived and the district court does have jurisdiction over a quiet title action." *Schmidt v. King,* 913 F.2d 837, 839 (10th Cir.1990) (citing *Rodriguez,* 629 F.Supp. at 339). In the same case, however, the court distinguished procedures relating to assessment, notice, and demand from procedures relating to the enforcement of the lien. *Id.* at 839. The present case can be distinguished from *Rodriguez* on a similar basis.

**12.** It is worth noting that an attorney has been sanctioned under Rule 11 for making an argument somewhat akin to Mr. King's. In *Greenhouse v. United States,* 780 F.Supp. 136, 139–40, 145–46 (S.D.N.Y.1991), the court granted a motion for sanctions against an attorney who had signed a motion seeking injunctive relief against the IRS and argued that, in *Shapiro*, the United States Supreme Court had completely eliminated the Anti–Injunction section of the Internal Revenue Code. The court found the attorney's reading of *Shapiro* was "indefensible" and "demonstrated an inexcusable misunderstanding of applicable law and existing precedents." *Id.* at 140, 145.

Fortunately for Mr. King, he has not attempted to make such an unfounded assertion in the present case. Even though his argument in the complaint is rather conclusory, it certainly does not indicate a belief that the Anti–Injunction Act has somehow been eradicated. Moreover, unlike the attorney in *Greenhouse*, Mr. King has pointed to additional authority interpreting the Supreme Court's holding in *Shapiro*. *See id.* at 139. Finally, *Greenhouse* is also distinguishable because it involved an attorney's *repeated* attempts to obtain an injunction despite the court's prior ruling that his client's claims did not fit the *Williams Packing* exception to the Anti–Injunction Act. *Id.* at 138, 144–45.

it.'" *Egbert v. United States*, 752 F.Supp. 1010, 1013 (D.Wyo.1990) (citing *Rodriguez*, 629 F.Supp. at 336; *White v. Commissioner*, 537 F.Supp. 679, 689 (D.Colo.1982)). Even though Mr. King is, by his own admission, a well educated and experienced tax lawyer, the complicated nature of the legal issues he faced in this case weighs in his favor in considering whether Rule 11 sanctions are appropriate.

Although the court believes Mr. King faced an almost insurmountable barrier in the Anti–Injunction Act, the court is loath to impose sanctions on an attorney who appears to have reasonably believed that the factual and legal arguments he advanced were legitimate advocacy. Hence, the court finds that Mr. King's inquiry into the law governing Mrs. Taylor's claim was "reasonable" within the meaning of Rule 11 and that, given Mr. King's belief that Mrs. Taylor had not received the required section 6303 notice, the claim that Mrs. Taylor was entitled to an injunction against the Government, while unlikely to succeed, was "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11.

## II. *Motion for Sanctions Against Plaintiff*

The Government also seeks sanctions against Mrs. Taylor. The Government contends that Mrs. Taylor knew she had a tax liability and that her lawsuit was frivolous. In support of this contention, the Government points to the journal entry of Mrs. Taylor's divorce in which she acknowledged that she was liable for one-half of the 1986 federal income tax. The Government also suggests that Mrs. Taylor may have been misleading Mr. King when she told him that she had not received the section 6303 notice, but offers no proof in that regard.

In the court's opinion, the Government's motion for sanctions against Mrs. Taylor should not be granted. First of all, the court is unwilling, and believes it would be imprudent, to impose an objective standard of reasonable inquiry on a nonsigning represented party such as Mrs. Taylor.[13] A nonsigning represented party is obviously relying upon her attorney to conduct a reasonable inquiry and determine whether her claims are "well grounded in fact" and "warranted by existing law." Fed.R.Civ.P. 11. It would be unfair to require such a party to certify that a reasonable inquiry was conducted. Thus, Mrs. Taylor should not be subjected to sanctions for any alleged lack of reasonable inquiry in the present case. Regardless of the Government's argument that Mrs. Taylor knew or should have known that her claim was frivolous, Mrs. Taylor was entitled to rely on Mr. King's advice and should not be sanctioned for doing so.

On the other hand, Mrs. Taylor may be subject to sanctions for her failure to provide pertinent information to her attorney.[14] *Greenhouse*, 780 F.Supp. at 147 (indicating that a nonsigning represented party may be held responsible under Rule 11 for

**13.** In *Business Guides*, the Supreme Court held that "Rule 11 imposes an objective standard of reasonable inquiry on represented parties *who sign papers or pleadings*." 498 U.S. at 554, 111 S.Ct. at 935 (emphasis added). The Court specifically refrained, however, from determining "whether or under what circumstances a *nonsigning* party may be sanctioned." *Id.* (emphasis added). Other circuits have likewise refrained from deciding this issue. For example, in *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991), the Second Circuit held that a nonsigning represented party could be subjected to Rule 11 sanctions. The court waffled, however, on whether an objective or subjective standard should apply. *Id.* at 1344 n. 3.

The Tenth Circuit's view on this issue, subsequent to the decision in *Business Guides*, is not clear. The Tenth Circuit has held that Rule 11 "imposes an affirmative duty on each attorney and each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." *Eisenberg*, 936 F.2d 1131, 1134 (10th Cir.1991) (citing *Business Guides*, 498 U.S. at 149, 111 S.Ct. at 930–31). However, in the same opinion, the court indicated that a represented party's responsibility to conduct a reasonable inquiry does not become personal and nondelegable unless the represented party has signed the paper upon which the motion for sanctions is based. *See id.* at 1135. Based on this analysis, it would appear as if the obligation imposed on Mrs. Taylor by Rule 11 should be viewed in light of those duties which she delegated to Mr. King as her attorney.

**14.** It is relatively clear that Rule 11 authorizes sanctions against nonsigning represented parties. The advisory committee's notes to the Rule state as follows: "Even though it is the attorney whose signature violates the rule, it may be appropriate

not conveying information to her attorney). Certainly, if there was evidence indicating Mrs. Taylor purposely withheld the section 6303 notice from Mr. King, Mrs. Taylor would be considered the "catalyst" behind the filing of her complaint and motion, and she should be sanctioned. *Chevron v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985) (upholding the imposition of sanctions against a represented party because the evidence indicated she was "the catalyst behind this frivolous motion"). The Government, however, has not set forth such evidence, and, resolving all doubts in favor of Mrs. Taylor, she does not appear to have been attempting to deceive either Mr. King or this court. Rather, Mrs. Taylor seems to have simply made a mistake in reviewing the documents she received from the IRS. In the court's opinion, the primary purpose of Rule 11, to deter the filing of frivolous claims, will not be furthered by sanctioning such an apparently honest mistake by a nonsigning party.

**IT IS ACCORDINGLY ORDERED,** this 20th day of September, 1993, at Wichita, Kansas, that the defendant's motion for sanctions under Federal Rule of Civil Procedure 11 is hereby denied.

under the circumstances of the case to impose a sanction on the client." Fed.R.Civ.P. 11, advisory committee's notes. Ideally, Rule 11 sanctions "should fall upon the individual responsible for the filing of the offending document." *Chevron v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985).