# IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION

FILED

July 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

ALSIDE SUPPLY CENTER OF
KNOXVILLE,

    Plaintiff-Appellant,

v.

SMITH HERITAGE SIDING
COMPANY, INC., and DENNIS
CLEMMER,

    Defendants,

and

METROPOLITAN LIFE INSURANCE
COMPANY,

    Appellee.

) C/A NO. 03A01-9702-CH-00069
)
) KNOX CHANCERY
)
)
) HON. SHARON BELL,
) CHANCELLOR
)
)
)
)
)
)
)
)
)
)
) VACATED
) AND
) REMANDED


JACK B. DRAPER, ARNETT, DRAPER & HAGOOD, Knoxville, for Plaintiff-Appellant.

JOHN A. LUCAS and MARTIN B. BAILEY, HUNTON & WILLIAMS, Knoxville, for Appellee.


## O P I N I O N


Franks. J.


In this action, the Chancellor, pursuant to T.R.C.P. Rule 11, sanctioned Alside Supply Center of Knoxville (Alside) $10,000.00, and Alside has appealed.

This dispute arose out of garnishment proceedings initiated by Alside against Metropolitan Life Insurance Company (Metlife). Alside had previously been awarded a

judgment against a Mr. Clemmer, who owned annuity contracts with Metlife.

Protracted litigation occurred as a result of the initiation of this action, due in part to Metlife's initially failing to answer the garnishment in a timely fashion and Clemmer's filing for bankruptcy. However, Metlife incurred approximately one hundred thousand dollars ($100,000.00) in attorney fees and expenses in Chancery and Bankruptcy courts, and the actions of Alside's attorney, David Lufkin, were found to be a cause of much of the time and money expended. Sanctions were entered against Lufkin in the Bankruptcy Court in the amount of $20,000.00 by Judge Richard Stair.

This action deals with Metlife's efforts to have further sanctions assessed against Alside in Chancery Court. The basis of the Chancellor's award of sanctions was made largely on the submission of inaccurate pleadings, such as the representation to the Chancery Court that the Bankruptcy Court had ruled that the garnishment action in Chancery Court did not violate the automatic bankruptcy stay. Lufkin also represented to the Chancery Court that Metlife had not forwarded Clemmer's funds to it, when the moneys had been submitted four months earlier.

Rule 11 sanctions are reviewed by examining whether the Trial Court abused its discretion. *Krug v. Krug*, 838 S.W.2d 197 (Tenn.App. 1992), *citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990). An abuse of discretion occurs if the trial court's ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter* at 405.

Alside essentially conceded the existence of Rule 11 violations, but argues that it should not be responsible for its local counsel's misconduct because it was not aware of his violations. An affidavit submitted by its in-house counsel, Mr. Cespedes, states that he was not aware of Lufkin's false statements "at the time."

The Chancellor acknowledged in her memorandum opinion that the corporation did not appear to be instigator or "catalyst" of bad faith or malice. She characterized the corporate counsel's role as involving a "lack of attention or over reliance on local counsel."

2

However, she found that in-house counsel for Alside had been kept "meticulously apprised of every step taken" by virtue of memos, letters, and facsimile which were "provided at each and every stage of the proceedings." She went on to state that Alside had "complete knowledge of the nature of the proceedings" and that the inaccuracy of the pleadings "should have been apparent," had Alside "exercised a minimal degree of care," since it was "constantly apprised of every step in the proceedings and whose advice was sought at each state of the proceedings." The record before the Chancellor comprised affidavits, submitted by both parties' attorneys, and the opinion of Judge Stair, who assessed sanctions against Alside's attorney, Lufkin, in the bankruptcy court, and other documents.

Alside insists that a client cannot be liable when it did not sign the defective pleading.

We note preliminarily that federal authority may be used for guidance in interpreting Rule 11. *Andrews v. Bible*, 812 S.W.2d 284 (Tenn. 1991).

> Rule 11 states in part that:
>
> Representations to Court.- By presenting to the court <u>(whether by signing, filing, submitting, or later advocating)</u> a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . (3) the allegations and other factual contentions have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .
>
> Tenn.R.Civ.Pro.11.02 (emphasis added).

This Court has held that the above emphasized portion permits assessment of Rule 11 sanctions against anyone who "advocates" a pleading, including the non-signing client. *Al-Haddad v. Ritter*, 1997 WL 44389 (Tenn.App. 1997) (homeowner could be assessed sanctions for requiring $8,000.00 in damages when plumbing problem had arguably been repaired at $35.00 cost). Liability for a non-signing client also can be found in the next section, which states:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the <u>attorneys,</u>

law firms, or parties that have violated subdivision 11.02 or are responsible for the violation of Tennessee Rules of Civil Procedure, 11.03. (Emphasis added).

Federal Rule 11 contains parallel provisions which have similarly been relied on when sanctioning non-signing parties. *See, e.g., Bergeron v. Northwest Publications Inc.*, 165 F.R.D. 518, 521 (D.Minn. 1996). Contrary to Alside's contentions, a non-signing party may be subject to sanctions.

Attorneys are held to an "objective" standard of reasonableness when determining whether they have complied with Rule 11. *Business Guides v. Chromatic Communications*, 498 U.S. 533, 549, 111 S.Ct. 922, 932 (U.S. 1991); *Andrews,* at 288; *Krug,* at 205. Accordingly, sanctions are appropriate when an attorney submits a pleading, motion, or other paper on grounds which he knew or should have known were meritless. *Vekris v. Peoples Express Airline*, 707 F.Supp. 679, 682 (S.D.N.Y. 1988). A subjective showing of bad faith is no longer necessary. *U.S. v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1344 n. 3 (2d Cir. 1991).

Signing parties are held to a standard that varies with the client's sophistication and experience. *Business Guides,* at 550. Business Guides, was an experienced litigant with in-house counsel to make the necessary "reasonable inquiry" on its behalf, but was held to an objective standard and assessed sanctions without a showing that it acted in bad faith. *Id. Business Guides* declined to reach the issue of the standard to be applied to non-signing parties. *Id.* at 554. At least one court has declined to impose an objective standard of reasonable inquiry on such a client. *Taylor v. U.S.*, 151 F.R.D. 389, 397 (D.Kan. 1993). However, that case dealt with a lay litigant who relied on her attorney with regard to the merits of her case. *Id.*

In *Continental Insurance Co. v. Construction Industries Services Corp.,* an experienced, non-signing corporate entity with an in-house counsel was held to a standard of "reasonableness under the circumstances." 149 F.R.D. 451, 455 (E.D. N.Y. 1993). The court did not elaborate as to what "reasonableness under the circumstances" required, although the end result was to sanction the corporation whose in-house counsel had not conducted a

"reasonable inquiry" into the facts and law and had misinformed local counsel of the company's principal place of business. The Court obviously applied an objective standard that does not require a showing of bad faith.

We believe the use of an objective standard for a sophisticated, non-signing party is appropriate. *SeeCoburn v. Cilco*, 610 F.Supp. 656 (M.D.N.C. 1985)*; also see Terminix Int'l Co. v. Kay*, 150 F.R.D. 532, 539 n. 7 (E.D. Penn. 1993);  *also see generally Painewebber, Inc. v. Can Am Financial Group, Ltd.*, 121 F.R.D. 324 (N.D.Ill. 1988); *Independent Fire Insurance Co. v. Lea*,  979 F.2d 377, 378-379 (5th Cir. 1992); *Chevron U.S.A. v. Hand*, 763 F.2d 1184, 1187 (10th Cir. 1985).

We hold that sanctions are appropriate against a corporate client when there has been meaningful participation by an in-house counsel, and the in-house counsel does not meet the criteria of the objective standard, meaning that he or she knew or should have known that the actions of local counsel were in violation of Rule 11 and took no steps to ameliorate. As to whether Alside played an active role in the representations, the affidavits submitted do little to shed light on the level of in-house counsel's participation. The affidavit of in-house counsel Cespedes indicates that he was unaware of improper actions by Lufkin and had not directed those actions.  It is unclear what the basis was for the Chancellor's finding that in-house was kept meticulously informed of the proceedings.

Regarding whether Alside, through its in-house counsel, failed to meet an objective standard of conduct, we recognize that the purpose of hiring local counsel is to gain familiarity and expertise with local variances in the law.  This type of reliance is common and reasonable and seems to have played a role here, as Alside's in-house counsel states in his affidavit that Ohio law does not use the writ of *scire facias* that was necessary in Tennessee.

The conflicting evidence in this record cannot be properly evaluated on appeal.  An evidentiary hearing is necessary in sanction cases where there are disputed facts or issues of credibility. *Chemiakin v. Yefimov*, 932 F.2d 124, 130 (2d Cir. 1991); *also see Didie v. Howes*, 988 F.2d 1097, 1105 n. 8 (11th Cir. 1993) ("While notice, 'from the party seeking sanctions, or from the court, or from both,' and an opportunity to respond to a motion

5

for Rule 11 sanctions comports under *Donaldson* with the due process requirements of Rule 11, we consider it prudent for a district judge to hold a hearing before imposing sanctions. *Donaldson*, 819 F.2d at 1560").

We believe under the circumstances of this case that it is appropriate to vacate the Trial Court's judgment and remand for an evidentiary hearing, where the Trial Judge can hear evidence and assess the credibility of the witnesses. Accordingly, we vacate the Trial Court's judgment and remand with the cost of the appeal assessed to the appellee.

_____
Herschel P. Franks, J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Charles D. Susano, Jr., J.

6